THADDEUS P. OZYCK ET AL. *v.* DAVID D'ATRI ET AL. (13258)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and HULL, Js.

Argued January 6—decision released March 8, 1988

*Hanon W. Russell,* for the appellants (plaintiffs).

*Frank J. Dumark,* for the appellees (defendants).

SHEA, J. In this action the plaintiffs sought to quiet their title with respect to a right of way claimed over the defendants' land, to enjoin the acts of the defendants in obstructing their use of it, and to obtain other related relief. Acting as the trial court, *Hon. Philip R. Pastore,* state trial referee, found the issues for the defendants and rendered judgment in their favor. The plaintiffs have appealed, presenting as the principal issue whether this court should abandon or modify the ancient doctrine that "[n]o right of way appurtenant can be created without a dominant as well as a servient estate" and that "[t]he way can become legally attached to the dominant estate only if the same person has unity of title to both the way and the dominant estate." *Curtin* v. *Franchetti,* 156 Conn. 387, 389, 242 A.2d 725 (1968). We conclude that this case does not provide a sufficient factual basis to warrant consideration of any modification of the rule and, therefore, decline the plaintiffs' invitation to resolve the primary issue they have raised.

We also leave undecided the remaining issue raised by the plaintiffs, whether the trial court erred in deciding that they had failed to prove their allegation that the disputed right of way is the only legal access they have to a portion of their land. This issue need not be addressed because its resolution is immaterial to the only basis alleged in the complaint for the existence of the easement, the conveyances made by the defendants' predecessors in title. Accordingly, we find no error.

The facts essential to our determination of the appeal are not disputed. The plaintiffs, Thaddeus and Pamela Ozyck, as well as Eleanor Harris,[1] own land in the town of Guilford, approximately 100 feet wide and 200 feet

[1] The plaintiff Eleanor Harris died during the pendency of this action and the executor of her estate was substituted for her as a plaintiff.

deep, which has been referred to in this appeal as the "Harris" parcel. This land is bounded on the south by Long Island Sound and on the west by land of Walter and Susan Spigelman,[2] which is also bounded by Long Island Sound on the south. Adjoining the Spigelman parcel on the west is the land of the defendants, David and Constance D'Atri, which also borders Long Island Sound on the south. To the west of the D'Atri parcel is the easterly end of Vineyard Avenue, a street upon which the plaintiff Ozycks have a residence. They claim to hold a right of way extending easterly along the sea shore from the terminus of Vineyard Avenue across the D'Atri and Spigelman parcels to provide access to the Harris parcel. The defendants have obstructed the use of the claimed right of way across their land by the construction of a stone fence.

The Harris, Spigelman and D'Atri parcels were once part of a tract of approximately thirty-one acres owned by Herbert Benton, the common grantor of the parties. In 1906, Benton conveyed a piece of this acreage, 100 feet by 100 feet, bordering Long Island Sound, to Aaron Hull without reserving any right of way, although he continued to own the remainder of the thirty-one acres, which included the Harris parcel. The land conveyed to Hull included a portion of the D'Atri parcel and the westerly forty feet of the Spigelman parcel.

In 1910, Hull transferred the land he had acquired from Benton to John Hawley by a warranty deed containing a reference to "a right of way across the south end of said described lot." When Hawley in 1917 conveyed the same tract to H. Leonard Beadle, the warranty deed also mentioned this right of way. Of the land he had acquired, with 100 feet of frontage on

---

[2] Walter and Susan Spigelman are not parties to this action and, therefore, are not affected by its determination.

Long Island Sound, Beadle in 1919 transferred to Nathan Schatz, without reference to any right of way, the easterly forty feet, which presently comprises the westerly forty feet of the Spigelman parcel. The remainder, with sixty feet of frontage on the Sound, by virtue of several intervening transfers containing references to a right of way over the southerly part of the land, was acquired by the defendants in 1981, and constitutes the D'Atri parcel over which the plaintiffs claim an easement.

Of the balance of the land remaining after the conveyance to Hull in 1906 of the piece that included the D'Atri parcel, Herbert Benton retained until his death a portion that included the Harris parcel. In 1929, this land was transferred from his estate to Elliot Benton, who in 1959 conveyed the portion known as the Harris parcel to James and Martha Shryock. After several intervening transfers, the plaintiffs acquired the property in 1976 and 1977.

The plaintiffs claim that they are entitled to an easement over the southern portion of the defendants' land principally by virtue of the warranty deed from Hull to Hawley in 1910 of the 100 feet by 100 feet parcel that Hull had acquired in 1906 from Herbert Benton. In this deed, after the description of the land conveyed, the following language appears: "There is a right of way across the south end of said described lot known as the extension of Vineyard Avenue." This provision of the deed has been repeated in each subsequent conveyance of the land of the defendants over which the easement is claimed to exist, including the deeds by which they acquired title in 1981.

The plaintiffs claim that the reference to the right of way in the 1910 deed from Hull to Hawley sufficiently indicates that Hull intended to create a right of way across the land of the defendants extending

from the Harris parcel to the easterly end of Vineyard Avenue. They maintain that the intended beneficiary of the easement Hull had created was Herbert Benton, who then owned, in addition to the Harris parcel, land bounding on the north and east the piece he had conveyed to Hull. They surmise that, even after Benton in 1908 had transferred the 100 feet by 100 feet piece to Hull without reserving any right of way, "Benton undoubtedly continued to cross the southerly portion of Hull's land and Hull must have acknowledged Benton's right, indeed, Benton's *necessity* to cross his land to reach Benton's own land." (Emphasis in original.) The right of way language in the deed from Hull to Hawley the plaintiffs characterize as "a formal acknowledgment of this right."

The only evidence supporting the plaintiffs' conjecture is that after the 1910 conveyance from Hull to Hawley, Benton may have been the only person whom the right of way mentioned in the deed would benefit. Even if this were true, the mere reference to the existence of the right of way cannot be construed to indicate an intention on the part of Hull to create an easement for Benton's benefit. The purpose of the reference to the right of way may well have been to protect Hull from any claim by Hawley based upon the warranty deed in the event that Benton or anyone else should assert a right to cross the land conveyed. "Its object evidently was to save the [grantor] contingently from any liability on [his] covenants. . . . Aside from the fact that the [person claiming the easement] is a stranger to that deed, it is impossible for us to construe its language as conveying any right to him." *Butterfield* v. *McNamara,* 54 Conn. 94, 99, 6 A. 188 (1886). The postulated use of the right of way by Benton might be of significance if the plaintiffs were claiming an easement by prescription or upon some other ground than the express grant in the deed to Hull from Hawley that

they rely upon. An acknowledgement of the existence of an easement is not equivalent to an intent to create one.

The plaintiffs also have relied upon a clause appearing in the deeds constituting the chain of title to the Harris parcel, beginning with the first conveyance thereof from Elliot Benton to James and Martha Shryock in 1959. This provision, which followed clauses transferring as appurtenances to the land conveyed two rights of way unrelated to the subject of this action and identified by specific deed references, was as follows: "together with all the right title and interest in and to any other rights of way which may exist." Although this general appurtenance clause was sufficient to give the plaintiffs, through intervening conveyances repeating it, whatever rights over the defendants' land Elliot Benton may have acquired from Herbert Benton for the benefit of the Harris parcel, it does not create any right not already in existence. Herbert Benton relinquished the power to create an easement over the D'Atri parcel when he sold it to Hull in 1906 without reserving any such right. Obviously Elliot Benton, his successor in title to the land that included the Harris parcel, could have no greater rights, nor could the plaintiffs.

The trial court in rendering judgment for the defendants relied upon our statement in *Curtin* v. *Franchetti,* supra, that "[t]he way can become legally attached to the dominant estate only if the same person has unity of title to both the way and the dominant estate." It is clear that even if Hull had actually intended to create a right of way for the benefit of Benton's land, this rule would prevent him from doing so, because Hull had no interest in Benton's land, the presumed "dominant estate." Though the unity of title doctrine is of ancient origin, *Curtin* appears to be the first case in which this court has followed it. We also approved the rule, without any necessity for invoking it, more

recently in *Stankiewicz* v. *Miami Beach Assn., Inc.,* 191 Conn. 165, 170, 464 A.2d 26 (1983). We note that the unity of title doctrine has fallen into disfavor with contemporary commentators as an obsolete vestige of feudalism that frustrates the intentions of the grantor. H. Harris, "Reservations in Favor of Strangers to the Title," 6 Okla. L. Rev. 127 (1953); 2 American Law of Property (Casner Ed. 1952) § 8.29; 5 Restatement, Property § 472, comment a. It has been rejected in several jurisdictions that had formerly followed the rule. *Willard* v. *First Church of Christ, Scientist,* 7 Cal. 3d 473, 498 P.2d 987, 102 Cal. Rptr. 987 (1972); *Townsend* v. *Cable,* 378 S.W.2d 806, 808 (Ky. 1964); *Garza* v. *Grayson,* 255 Or. 413, 467 P.2d 960 (1970). In these cases that have abandoned the doctrine, however, the intention of the grantor to create an easement or other interest in the "stranger to the title" had been clearly expressed in the instrument, unlike the deed from Hull to Hawley, which does not purport to create an easement but merely acknowledges the possible existence of one without indicating the person or the land to be benefited. Under these circumstances we have decided to defer any reconsideration of the rule adopted in *Curtin* until we are presented with an appropriate case where the intention of the grantor to create in his deed an interest in someone other than the grantee is reasonably clear.[3]

Although the trial court undoubtedly relied to a large extent upon the unity of title doctrine in rendering judgment for the defendants, the facts relevant to Hull's

---

[3] Although the concurring opinion is critical of our failure to resolve the continuing viability in this state of the unity of title doctrine as approved in *Curtin* v. *Franchetti,* 156 Conn. 387, 242 A.2d 725 (1968), we have followed our usual practice of avoiding the reconsideration of earlier decisions in the absence of some necessity arising in the case before us. In *Broadway Bank & Trust Co.* v. *Longley,* 116 Conn. 557, 560–62, 165 A. 800 (1933), this court questioned the long-standing common law rule followed in earlier decisions that a part payment by one joint debtor will toll the running of

intention in inserting the language pertaining to the right of way in his deed to Hawley are undisputed. The only evidence of his intent was the deed itself and any circumstances surrounding the transfer that could be ascertained from the numerous deeds introduced and the location of the various parcels. We conclude that none of these circumstances, taken in conjunction with the language in the deed relied upon, is sufficient to sustain the plaintiffs' burden of proving that Hull intended to create an easement for the benefit of the Harris parcel or other land of Herbert Benton over the land conveyed to Hawley, including the parcel now owned by the defendants.

With respect to the second claim of error, that the trial court failed to find that the only legal access the plaintiffs have to the Harris parcel is through the disputed right of way, the plaintiffs have failed to point out how such a finding would have any significant bearing upon Hull's intention to create a right of way in 1910 when he deeded the land to Hawley. At that time Herbert Benton owned land bounding the piece conveyed on the north and east, over which he presumably had access to the Harris parcel as a portion of the land he retained. In any event, the plaintiffs in their complaint and at trial relied wholly upon a claim of an easement by grant and, even on appeal, do not maintain that they have proved an easement by necessity. If they have no legal access to the Harris parcel as claimed, that circumstance does not enhance the basis for an easement relied upon in this case.

the statute of limitations as to the other, but did not resolve the issue. "If the exigencies of this case required, we should feel compelled to consider carefully whether the rule announced in our earlier cases should, in the light of these considerations, now be followed." Id., 562. The rule was abandoned and the earlier cases were overruled, however, when a later case "squarely present[ed] this question for determination." *Apuzzo* v. *Hoer,* 125 Conn. 196, 201–202, 4 A.2d 424 (1939).

There is no error.

In this opinion, PETERS, C. J., CALLAHAN and HULL, Js., concurred.

ARTHUR H. HEALEY, J., concurring. I concur in the result reached by the majority. I do, however, have considerable difficulty with its approach and the rationale that yields that result.

The visceral issue squarely presented to us by the plaintiffs is that the trial court erred when it applied the rule of *Curtin* v. *Franchetti,* 156 Conn. 387, 242 A.2d 725 (1968), to find against them.[1] The defendants agreed that this was the issue here.[2] There is no question that the plaintiffs knew, at trial, on appeal and in argument on appeal, that the rule of *Curtin* was fatal to their claim when they argued that we overrule *Curtin,* which recognized the unity of title doctrine.

The rationale of the majority for the result reached can fairly be read as having all but exsanguinated *Curtin.* This has been done in a case where the result should have been dictated by *Curtin,* a case involving real property decided less than twenty years ago. It is quite one thing not to adopt the new rule proposed by the plaintiffs because the factual pattern of this case does not quite fit into the factual pattern of those juris-

---

[1] The plaintiffs framed this issue on appeal as follows: "When the trial court applied the 'Unity of Title' rule, it was applying an archaic rule rooted in feudal English property law which no longer has any justification in modern real property law inasmuch as it gives full weight and significance to form over substance, ignoring the intent of the parties involved."

[2] The defendants met the plaintiffs' statement of the issue by framing their position as follows: "1. Did the trial court err in applying the rule of cases such as *Curtin* v. *Franchetti,* 156 Conn. 387, 389 [242 A.2d 725] (1968), and *Stankiewicz* v. *Miami Beach Assn., Inc.,* 191 Conn. 165, 170 [464 A.2d 26] (1983), which holds that no right of way appurtenant can be created without a dominant as well as a servient estate and that the way can only become legally attached to the dominant estate if the same person holds unity of title to both the way and to the dominant estate?"

dictions that have rejected the unity of title doctrine. But it is quite another thing, having sown the seeds of *Curtin's* demise, to dispatch the holding of *Curtin* in the manner which the majority chooses to do so. The suggestion is made that "we have decided to defer any reconsideration of the rule adopted in *Curtin* until we are presented with an appropriate case . . . ." I submit that simply means that this court will then announce, as the plaintiffs ask in their brief, that "Connecticut should declare the 'unity of title' principle dead and buried forever more." This period of interregnum until the time *Curtin* is unequivocally overruled is troublesome. It is particularly so because of the signal it sends to those who now may have "interests" in real property that are not cognizable under *Curtin* but may soon germinate into cognizable interests. If so, what will this do by way of its effect on such properties? Will it start to aid and abet the execution and recording of instruments that in effect create post-*Curtin* easements?

" 'A decision of this court is a controlling precedent until overruled or qualified. *Daury* v. *Ferraro,* 180 Conn. 386, 389, 143 A. 630 [1928].' *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 61–62, 111 A.2d 4 (1955)." *Burger & Burger, Inc.* v. *Murren,* 202 Conn. 660, 662, 522 A.2d 812 (1987). We should not overrule one of our earlier decisions "unless the most cogent reasons and inescapable logic require it." *Herald Publishing Co.* v. *Bill,* supra; *Cummings* v. *Tripp,* 204 Conn. 67, 76–77, 527 A.2d 230 (1987). We have properly recognized that " '[e]xperience can and often does demonstrate that a rule, once believed sound, needs modification to serve justice better . . . [t]he adaptability of the common law to the changing needs of passing time has been one of its most beneficent characteristics. A court, when once convinced that it is in error, is not compelled to follow precedent. *Smith* v. *Allwright,* 321 U.S. 649,

655, 64 S. Ct. 757, 88 L. Ed. 987 [1944].' *Herald Publishing Co. v. Bill,* supra." *Cummings v. Tripp,* supra, 77. Despite the majority's statement of deferring any reconsideration of *Curtin,* its decision *does* reconsider it; any fair reading of the majority opinion demonstrates that the formal act of overruling *Curtin* has, at the very least, been deferred. Yet no cogent reason or inescapable logic for doing so is easily detected; however, the harbingers are easily detected. Cf. *Aetna Casualty & Surety Co. v. Murphy,* 206 Conn. 409, 538 A.2d 219 (1988).

The majority's serious undermining of *Curtin* raises grave concerns not only as to that eminently desirable and essential doctrine of stare decisis, but it does so in an area of the law that commands particular stability, i.e., real property. While it is always crucial in justifying adherence to precedent to require that those who engage in matters based on the existing law be able to rely on its stability, it is very more much so in cases involving property rights as *Curtin* does. See *State Land Board v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 381, 97 S. Ct. 582, 50 L. Ed. 2d 550 (1977); *United States v. Title Ins. & Trust Co.,* 265 U.S. 472, 486–87, 44 S. Ct. 621, 68 L. Ed. 1110 (1924); *Confederated Salish & Kootenai Tribes v. Namen,* 665 F.2d 951, 960 (9th Cir. 1982); *Heyert v. Orange & Rockland Utilities, Inc.,* 17 N.Y.2d 352, 218 N.E.2d 263, 271 N.Y.S.2d 201 (1966). I recognize that stare decisis is not a rule of law but a matter of judicial policy and that it does not have the same kind of force in each kind of case so that "adherence to or deviation from that general policy may depend upon the kind of case involved, especially the nature of the decision to be rendered that may follow from the overruling of a precedent."[3] See *Heyert v. Orange & Rockland Utilities, Inc.,*

---

[3] We have recognized this proposition. For example, in *Hartford National Bank & Trust Co. v. Harvey,* 143 Conn. 233, 243, 121 A.2d 276 (1956), a

supra. The reason that stare decisis applies with special force to decisions affecting titles to land is the special reliance that such decisions mandate. They have "become rules of property, and many titles may be injuriously affected by their change." *Minnesota Co.* v. *National Co.*, 70 U.S. (3 Wall.) 332, 334, 18 L. Ed. 42 (1866).

The vitality of common law courts to respond to reasoned need for change and not to perpetuate demonstrably archaic views constitutes one of their fundamental strengths in an evolving society. Stare decisis accommodates that rubric. Given the special place of judicial pronunciations on real property in our system for the reasons set out earlier, the issue of the continuing validity of *Curtin* should be met now—and decisively so.

I, therefore, concur in the result for the reasons stated.

will construction case, we said: "In the field of testamentary construction, precedents are usually inconclusive, since the same or substantially similar expressions seldom occur in different wills." In contrast, however, when the case before us involves, as *Curtin* does, the doctrine of unity of title, obviously the matter is quite the contrary. *Curtin* v. *Franchetti*, 156 Conn. 387, 242 A.2d 725 (1968).