[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action brought by the owners of land in Cromwell against Algonquin Gas Transmission Company ("Algonquin") and Connecticut Natural Gas Company ("CNG"). Originally, there were two lawsuits which were filed by the plaintiff, the first being No. CV 89-0368933S, which was brought in the Judicial District of Middlesex against Algonquin only. The reason for the second suit was that Algonquin's property is located in both Rocky Hill (Judicial District of Hartford/New Britain) and Cromwell (Judicial District of Middlesex), whereas CNG's property is located only in Rocky Hill (Judicial District of Hartford/New Britain). The Middlesex case was transferred to this judicial district, and the cases were consolidated at the start of trial. The court finds the issues in favor of the defendants.
The plaintiff, Harry E. Burr, Trustee, ("Burr") is the owner of land which is located adjacent to and easterly of the land owned by Algonquin. Burr is acting as trustee for a general partnership known as Shunpike Associates. The seven partners of Shunpike Associates are Harry Burr, William Berman, Robert Frazier, Mario Pittruzello, Salvatore Pittruzello, Kenneth Kasek and Michael O'Brien. The Burr land consists of approximately twenty-five acres in Cromwell. Defendant Algonquin owns approximately thirty-eight acres of land in the towns of Rocky Hill and Cromwell, which is adjacent to the plaintiff's land. Defendant CNG is a gas distribution company which delivers and sells gas to local customers in Connecticut. It owns land in the Town of Rocky Hill which is located northerly of and adjacent to the land owned by Algonquin.
Plaintiff Burr's purpose in bringing these actions is to establish a right of way westerly over land of the defendants to a public highway running north/south, known as Route 3 or the "Shunpike." The complaint is in six counts. The first, second, and fifth counts are directed at Algonquin and seek to quiet title to an easement, pursuant to C.G.S. 47-31, over
Algonquin's land, and to enjoin Algonquin from interfering with it. The first count is based on a theory of express easement and the fifth count, in the alternative, is based on a theory of prescriptive right. The third, fourth, and sixth counts set CT Page 7325 forth similar theories with respect to CNG. The express easement over the Algonquin property is alleged to have been reserved in favor of the plaintiff's predecessor in title, Acquiviva, in a grant of easement dated November 10, 1951. The prescriptive right is alleged to have arisen through adverse use by the plaintiff's predecessor and the plaintiff. The express easement over the CNG property is alleged to be the result of a grant of easement by CNG's predecessor, Hartford Gas Company, to Algonquin and the plaintiff's predecessor, Acquiviva, on November 21, 1962. The prescriptive right over CNG's property is alleged to have arisen through adverse use by the plaintiff's predecessor and the plaintiff. At the conclusion of the evidence in this case, the plaintiff conceded that the allegations of the sixth count had not been proved, and the court accordingly dismissed that count.
The court's findings of fact are based on expert and lay testimony; documentary and physical evidence in the form of deeds, maps and photographs; and the court's field inspection of the properties in question. The narration may be aided by reference to the court's diagram, attached hereto as Appendix A.
I. CHRONOLOGY
Plaintiff Burr's property lies to the east of property of Algonquin and adjacent to it, and to the southeast of property of CNG. The chronology of the various parties' acquisitions of their properties is important to the resolution of the case and is as follows:
 From 1941 to January 1989, plaintiff Burr's property was owned by the Acquiviva family.
 On October 11, 1951, Algonquin acquired the Ewald property.
 On November 10, 1951, Acquiviva granted Algonquin a pipeline easement over the Acquiviva/Burr property. In that deed, Acquiviva stated:
 "It is understood that the owner will have the right to enter his property through the old trace road which crosses the company property. It is the same road which has for its entrance on the Shunpike and it continues on to the north of the owners land." CT Page 7326
In 1952, Algonquin acquired the Brace property.
 In 1957, Algonquin acquired the Brennan, Smith and Klupko properties.
 In 1958, Algonquin acquired the Talbot and McIntyre properties.
 In 1960, Algonquin acquired the Bordonaro property.
 In 1962, Hartford Gas Company (predecessor of CNG) granted an easement along its southern border to Algonquin and Acquiviva.
 In 1989, plaintiff Burr acquired the Acquiviva property.
As the above chronology and the diagram in Appendix A demonstrate, Algonquin did not own any land adjacent to Route 3/Shunpike or adjacent to the Acquiviva/Burr property in 1951, when Acquiviva inserted the statement concerning the "old trace road" in the deed granting the pipeline easement. Acquiviva did not own any of the land over which he sought to reserve the "old trace road" right of way. Plaintiff Burr did not own his property at the time Hartford Gas granted the easement along its southern border and running to Route 3/Shunpike.
II. Old Trace Road
Various expert witnesses testified as to the location of the "old trace road," which is the name given to the right of way in the 1951 pipeline easement and which is the easement now claimed by the plaintiff. Samuel Acquiviva, the son of the original owner, testified as to the location of an old road and path from the Shunpike to the Acquiviva land. Additionally, during the trial, the court inspected the area to attempt to determine the location of the road. There is essentially no dispute that the dirt road shown in the court's diagram as running north/south through the former Bordonaro property is the "old trace road." At its northern extremity, that road dissolves into a melange of thickets, streams, clumps of trees, tall weeds, and grass. Preceding northwesterly through the former Ewald property, vestiges of either a narrow road or wide path sporadically appear. Samuel Acquiviva testified that his family would enter the former Talbot property from Route 3/Shunpike and proceed easterly along a dirt road or path until nearing a high tension power station. The station is on the former Bordonaro lot. At that point, they would leave the CT Page 7327 road, which was then barely discernible, and walk easterly to the Burr/Acquiviva property. Later, after Algonquin paved its driveway, the Acquivivas were directed by Algonquin employees to enter through that driveway rather than over the original grassy route south of the driveway.
There is no present indication of any road, other than the paved driveway, that connects the Algonquin property directly to Route 3/Shunpike.
Based on all of the evidence, the court finds that no part of the "old trace road" referred to in the November 1951 pipeline easement ever connected to or touched the plaintiff Burr's property at any point. The court further finds that at the time of the 1951 pipeline easement Algonquin did not own the property where the "old trace road" connected to Route 3/Shunpike (former Talbot property) or the property (former Bordonaro property) through which the "old trace road" ran and which was adjacent to the Burr/Acquiviva property. The court further finds that no part of the "old trace road" ever connected to the 1962 Algonquin/Acquiviva easement granted by the Hartford Gas Company, CNG's predecessor.
III. Adverse Use
The plaintiff's claim that he has an easement over Algonquin's properties by virtue of adverse use is based on the use by the Acquiviva family over the forty-eight years that they owned the Burr/Acquiviva property. Samuel Acquiviva, who was born in 1950, testified that as a young boy he would accompany his father on visits to the Burr/Acquiviva property approximately once a year. Later, after his father died in 1987, Mr. Acquiviva and his brother continued to visit the property occasionally. The Acquivivas would use different routes to their property. Sometimes, they would approach it from Geer Street in the south, proceeding northerly through other property not involved in this law suit. Other times, they would approach their property from Route 3/Shunpike over Algonquin's property and the Talbot, Brace and Bordonaro properties before Algonquin acquired them. Each time they took this route, they would be stopped by employees of Algonquin. After they identified themselves as Acquivivas, the Algonquin employees would allow them to proceed. They would then drive their vehicle a short distance over the Algonquin driveway, park it, and then proceed on foot. As indicated previously, their route was essentially due east over an old road, then leaving the road near the power station, then eastward from the power station into their property. From the power station, the Acquivivas' route was haphazard, following no consistent trail through the woods and underbrush. There was not then nor is CT Page 7328 there now a road or even a path to follow from the power station to the Burr/Acquiviva property. The Acquivivas were never sure precisely where their western property line was, and expert testimony in this case established that they were badly mistaken in their estimate of the location of that boundary line.
Robert Curtis had been the plant superintendent for Algonquin during all of the years in question, and he lived on the property in the caretaker's house, which was located south of the paved driveway and north of the old roadway entering from Route 3/Shunpike. His duties included guarding Algonquin's property against trespassers. He testified that he "understood" that the Acquivivas had some right to cross over Algonquin's property and he would, therefore, permit them to do so whenever they appeared and identified themselves. He got this understanding from his predecessor on the job. He confirmed that the Acquivivas would come "about once a year."
Based on all of the evidence, the court finds that the Acquivivas crossed over Algonquin property no more than once a year for a period of approximately forty years. They did not follow the same pathway except at the point where they first entered from Route 3/Shunpike. They made no improvements to the route, other than to remove some brush from time to time. They took no action to prohibit anyone else from traversing the same areas. Most of their use consisted of travel by foot, and they never drove a vehicle from Route 3/Shunpike to their own property, the Burr/Acquiviva lot. Prior to 1951, they made no claim of a right to traverse the Algonquin property. After 1951, they claimed a right to do so based on their statement in the pipeline easement.
IV. Admissions by Algonquin
During the trial, the plaintiff produced testimony that employees of Algonquin admitted in conversations with one or more of the members of the plaintiff trust that Algonquin did not dispute plaintiff's right to traverse the property. This admission was attributed to Franklin Jackson. Mr. Jackson testified and denied making any such statement. The court accepts his testimony as the more credible and finds that no Algonquin employee admitted to the plaintiffs that they had a valid right of way.
V. The 1962 Easement
Defendant CNG owns the land in Rocky Hill which is northerly of, and abuts, the property of defendant Algonquin. On November 21, 1962, CNG's predecessor in interest, The CT Page 7329 Hartford Gas Company, conveyed to plaintiff's predecessor in interest, Philip John Acquiviva, and to defendant Algonquin a Grant of Easement.
In that document, The Hartford Gas Company granted to the grantees, "their heirs, administrators, successors and assigns, a permanent right-of-way and easement for passing and repassing, on foot or by vehicles, over a strip of land twenty-five (25) feet in width situated along the southerly boundary of Grantor's land . . ." There is no reference to the Burr/Acquiviva property in this document. The right of way begins at Route 3/Shunpike and extends easterly 500 feet. Its eastern tip is approximately 900 feet west of the nearest point on the Burr/Acquiviva land. It does not connect to any point on the "old trace road." The nearest point on the "old trace road" is approximately 100 feet south of this easement. The Acquivivas never used this easement as an access to their property. Since 1985, CNG has restricted access to this right of way by a gate, signs and watchmen. There was no evidence concerning the intent of the parties in creating this easement. There was no evidence that Philip John Acquiviva ever conveyed his interest in this easement to anyone, including the members of his family who succeeded to the Burr/Acquiviva property.
VI. Conclusions
Based on the evidence discussed above, the court concludes that the 1951 pipeline easement granted by Acquiviva to Algonquin did not also constitute an enforceable express grant or reservation of an easement over Algonquin's property. First, the document does not satisfy the provisions of the Statute of Frauds, C.G.S. 52-550, which reads in relevant part as follows:
 No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: . . . (4) Upon any agreement for the sale of real property or any interest in or concerning real property. . .
In this case, "the party to be charged" was Algonquin, and it did not sign the document which purported to convey the interest in its property. Therefore, the plaintiff may not enforce the document against Algonquin.
The second reason why the 1951 document did not reserve rights to Acquiviva over Algonquin's property is that neither CT Page 7330 Acquiviva nor Algonquin owned the Bordonaro, Klupko, Brace, Smith, or Talbot properties-in 1951. The document was, therefore, totally ineffective with respect to those properties because their owners did not consent to any rights of way over them. Since the "old trace road" runs through those properties, the plaintiffs' claim to a right of way over that road, based on the document, is likewise ineffective. The fact that Algonquin subsequently acquired title to those properties did not operate to subject them to an easement because Algonquin never agreed that its after-acquired property would be so burdened.
The third reason why the 1951 document did not create an easement appurtenant, one which runs with the land, is that there was no unity of title. "No right of way appurtenant can be created without a dominant as well as a servient estate" and "(t)he way can become legally attached to the dominant estate only if the same person has unity of title to both the way and the dominant estate." Ozyck v. D'Atri, 206 Conn. 473, 474
(1988). In this case, there was no common grantor of the dominant estate and the right of way. As indicated above, in 1951 Acquiviva had no interest in any of the Algonquin property, and Algonquin did not own the Bordonaro property or the properties abutting Route 3/Shunpike. The 1951 document could not, therefore, create an easement appurtenant in favor of the Burr/Acquiviva property.
Even if the 1951 pipeline easement could be construed as creating some form of easement in gross or license in favor of Philip John Acquiviva, he never specifically conveyed any such interest to anyone else. The plaintiff could not have acquired any such right, therefore, from the Acquiviva family members who succeeded Philip John.
The court further concludes that the Acquivivas and, therefore, the plaintiff did not acquire any prescriptive right to traverse the Algonquin properties. "To acquire a right of way by prescription, there must be a user which is open, visible, continuous and uninterrupted for fifteen years and made under a claim of right. . . Use under a claim of right means `without recognition of the rights of the owner of the servient tenement. . . A use by express or implied permission or license cannot ripen into an easement by prescription. . .Where the use depends on authority from the owner, it involves a recognition of his right to terminate, which negates the adverse character of the use." Putnam, Coffin Burr, Inc. v. Halpern, 154 Conn. 507
(1967) (citations omitted). The plaintiff had the burden of proving the acquisition of the prescriptive rights claimed.
In this case, the evidence indicates that the Acquivivas CT Page 7331 did traverse the Algonquin properties for a period of time in excess of fifteen years. However, this use was at best sporadic, perfunctory and insignificant. Once a year at most, one or more of the Acquivivas would drive onto the Algonquin driveway, park, and then hike into their land over the Algonquin property. Although their relations with the Algonquin employees were ambiguous, they generally obtained acquiesence if not positive permission from those employees before proceeding. They made no improvements and their brush clearing was not even sufficient to create a lasting pathway to their property. Given these sparse facts, the court cannot owner. Furthermore, even if some prescriptive right could be found, it would be at most the right to walk on foot over the Algonquin property. No other use was ever exercised by the Acquivivas. Since the specific claim of the plaintiff in this case is the right to drive heavy vehicles over the Algonquin property, it has no basis in fact or support in the law. Conn. 622, 634 (1924). The 1962 easement was separated from the Burr/Acquiviva property by nine hundred feet at its closest point and, as the court has held, the Acquivivas had no legal right to traverse the intervening property without permission of the owner.
The most that Acquiviva acquired in the 1962 conveyance was an easement in gross or a license to use the driveway which was personal to him and did not run with the Burr/Acquiviva property. There is no evidence that he ever attempted to convey or devise that interest to anyone, and the court concludes it expired at his death.
For all of the reasons set forth above, the plaintiff is not entitled to have title or any interest in the Algonquin or CNG properties settled in him. Accordingly, judgment may enter in favor of the defendants.
MALONEY, J.
[EDITORS' NOTE: APPENDIX `A' IS ELECTRONICALLY NON-TRANSFERRABLE.]