[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant case is an appeal from the assessment of sewer benefits on a property known as 290 Commercial Street in Watertown. The assessment occurred on March 9, 1992, and the appeal was taken in the name of Raphael Cocchiola, the purported owner on the date that the assessment was made. Basically, the appeal involves two questions. First, was 290 Commercial Street benefited by the installation of a public sewer line in view of the plaintiff's contention that, as a matter of right, he could connect into a private sewer line on nearby property. Second, assuming that 290 Commercial Street was benefited from the installation of the new public sewer line, what was the extent of the benefit since an operating septic system existed on the premises. Decisional law requires that these issues be determined after a trial de novo. O'Rourke v. Stamford,179 Conn. 342, 345 (1979); Orange Street Armory Associates, Inc. v. New Haven, 17 Conn. App. 166, 171 (1988).
 I.
From the evidence that was introduced and the reasonable inferences that could be drawn therefrom, the facts set forth below are found.
On March 9, 1992, the defendant authority assessed sewer benefits on properties bordering New Wood Road. One of these properties is 290 Commercial Street which has 135 feet on the southerly side of New Wood Road, borders Commercial Street on the west side thereof and extends behind the cul-de-sac end of Commercial Street along the westerly lines of lots designated as A-29 and B-25 on maps such as defendant's exhibit 18 and plaintiff's exhibit C. The plaintiff and his wife received this property from Raymond G. Hoffman on November 19, 1962. The plaintiff's wife conveyed her interest to him on November 26, 1986. On January 9, 1992, the plaintiff transferred his interest to his son, Anthony Cocchiola. His warranty deed recited that it was subject inter alia to an easement agreement between The Banking Center and Raphael A. and Lucy Cocchiola that was dated and recorded on January 29, 1980.
Aside from receiving the conveyance from his father on January 9, 1992, Anthony Cocchiola owned other land in the immediate vicinity. On February 19, 1974, he received a deed from Nicholas Colangelo and Anthony Calabrese to land described CT Page 11216 as lot 29 on a "Map of Section Three of Industrial Land of Raymond G. Hoffman" which was shown by the evidence to be the same as lots A-29 and B-25 adjoining 290 Commercial Street on its easterly side. On March 11, 1975, Anthony Cocchiola received from Eylematic Manufacturing Company, Inc. a conveyance of Lots 20, 23 and 25 as shown on a "Map of Section One of Industrial Land Belonging to Raymond G. Hoffman." On the same date, Anthony's wife, Sandra Lee Cocchiola, received a similar conveyance of lots 21, 22 and 24. Lots 23, 24 and 25 bound lots A-29 and B-25 on the east. Lots 20, 21 and 22 form the easterly boundary of the lands of Nicholas Colangelo and Anthony Calabrese. At one time, therefore, Anthony Cocchiola and his wife owned all of the land from the east side of Commercial Street to Straits Turnpike, except for the corner piece at the' intersection of Commercial Street with New Wood Road, which continued to belong to Colangelo and Calabrese.
Contemporaneous with the deed from Colangelo and Calabrese, they and Anthony Cocchiola entered into a formal written agreement whereby he, his heirs and assigns were provided with an easement in perpetuity to construct, install, maintain and use an underground sanitary sewerage pipe system across their property. The agreement acknowledged that the parties thereto have a common boundary. The agreement required the sewer system to be constructed so that at two points there would be facilities that would enable Colangelo and Calabrese, their heirs or assigns to tie in. These points and the location of the system as a whole were to conform to a map that had been prepared and incorporated into the agreement to the extent that such was reasonably practical.
On January 29, 1980, Anthony Cocchiola and his wife, Sandra[1], sold what in the deed is described as Lot "B" on a map prepared by John A. Reynolds to the Banking Center. Lot B, as described in the deed, encompasses all of the lot designated as B-25 on other maps plus lot 23 and a portion of lot 24, so that the grantee was provided with frontage on both Commercial Street and Straits Turnpike.
In the deed, the grantors reserved for themselves, their heirs and assigns in perpetuity a twenty foot easement, as shown on a map prepared by "Harry E. CoLe son, Civil Engineer Land Surveyor," for the construction, maintenance and use of an underground sanitary sewerage pipe system that was to extend under lots A and B as shown on said map. CT Page 11217
As part of the transaction between Anthony and Sandra Cocchiola and The Banking Center, two agreements concerning easements were executed. The first agreement acknowledged that Anthony and Sandra and The Banking Center will share in the benefits of the sanitary sewer easement that transverses the property of Colangelo and Calabrese. The first agreement in pertinent part then provided that until The Banking Center or the then owner of lot B connected into the system, Anthony and Sandra or the then owner of lot A would be responsible for maintenance or repair of the sewer line. After the connection was made, The Banking Center or the then owner of lot B would share equally with Anthony and Sandra or the then owner of lot A in the maintenance or repair of the portion of the sewer line that exists in lot B.
The second agreement was between The Banking Center as the owner of lot B and Raphael and Lucy Cocchiola as the owners of 290 Commercial Street. In the second agreement, a provision was made for the granting of a twenty foot wide sewer easement across lot B to enable Raphael and Lucy or their successor to connect into the system that ran or was proposed for lots A and B and the land of Colangelo and Calabrese. The agreement recited that the easement was to be granted upon the request and at the expense of the then owner of 290 Commercial Street and was only for the use of that property. There were, however, several conditions. Raphael and Lucy or their successor has to provide a professional opinion that the present system could accommodate the additional effluent and a legal opinion that connecting into and using the existing system did not contravene any other agreement governing the maintenance and use of the entire sewer line. Of great importance to the present litigation is the clause stating that the obligation to grant the easement would terminate if the easement was not requested within three years from January 29, 1980.
On November 14, 1980, Anthony and Sandra Cocchiola conveyed lot A to D.L.O. Enterprises. Lot A is bounded on the north by lot B, transferred earlier by Anthony and Sandra to The Banking Center. It encompasses all of the parcel designated as lot A-29 on other maps plus lot 23 and a portion of lot 24. The description of the conveyance included "a full, perpetual easement having a width of twenty feet to construct, install, maintain and use an underground sanitary sewerage system under, through and across lot B . . . as designated `Sanitary Sewer CT Page 11218 Easement' on a Map entitled "As Built Plot Plan — Prepared For Anthony Cocchiola . . . by Harry E. Cole Son, Civil Engineer Land Surveyors," The deed of lot A, like the deed of lot B, listed several encumbrances. None of them, however, referred to property of Raphael or Raphael and Lucy Cocchiola.
Anthony Cocchiola constructed the private sewer line of six inch concrete pipe across the land of Colangelo and Calabrese to a manhole in New Wood Road in 1974. Subsequently, he extended the line to serve lots A and B. The private line was fully operative and contained three wyes when the building on the property of Colangelo and Calabrese[2] was connected to it in 1992 by means of the middle wye. Anthony Cocchiola testified that the other two wyes provided room for two more hookups.
The defendant's minutes of February 4, 1974 reveal that Anthony Cocchiola was assessed $6.00 per foot for the private sewer line of seventy five feet, totaling $450.00. The defendant expressed a willingness to credit this sum against its 1992 assessment of benefits conferred upon 290 Commercial Street. For some reason, that was never fully explained. The Watertown Assessor's property card for 28=90 Commercial Street contains a "yes" alongside the word "sewer" under the title of "Site Description."
Cocchiola Paving, a family business, started by Raphael and now under Anthony's direction, occupies 290 Commercial Street. There is an operating septic system on the premises. According to Anthony, both he and Raphael shared in the expense of the private sewer line which cost $12,000.00.
Watertown has an ordinance providing that "[n]on-polluting existing buildings not choosing to connect to [an available] sanitary sewer shall operate and maintain the private sewage disposal facilities in a sanitary manner at all times, at no expense to the Town." The ordinance then goes on to say "[s]hould repairs become necessary, the Town Health Officer may require connection to the sanitary sewer." At the present time, although not in 1974, the Town requires a party connecting into a private sewer line to discontinue the connection and to connect to the Town's sewer main within six months of the effective extension of the Town's main to the connecting property.
Real estate appraisers testified for both the plaintiff and CT Page 11219 the defendant. Mr. Lanese, the plaintiff's appraiser, utilizing the market data approach, appraised the land only at 290 Commercial Street to be worth $65,000.00 before the advent of the public sewer line in New Wood Road. He determined that the cost to connect 290 Commercial Street to the sewer line on the property of Colangelo and Calabrese amounted to $3,599.00, while the cost of connecting to the public sewer line would be $5,255.00. He therefore reasoned that 290 Commercial Street was not benefitted [benefited] by the new public sewer line. At the trial, Mr. Lanese valued the existing septic system at $5,000.00, which he said was approximately one-half of its original cost. Lanese's finding of no benefit is based, of course, upon acceptance of the plaintiff's claim of entitlement to use the private sewer
Mr. Nocera, the defendant's appraiser, also using the market data approach, appraised the land only of the 1.3 acre site at 290 Commercial Street as worth $12,500.00 before the public sewer was available and $30,000.00 afterward. The difference of $17,500.00[3] was attributed by Mr. Nocera to value enhancement resulting from sewer availability. In Mr. Nocera's opinion, the existence of the present septic system added nothing to the value of 290 Commercial Street.
Philip Deleppo, the Director of Public Works in Watertown, and Vincent Petroccia, the former superintendent of the defendant authority, also testified. Contrary to Anthony Cocchiola. They described the remaining two wyes as openings to clean out the private sewer line and not as means of connection.
Some other factual findings have also been made. They appear in subsequent portions of this memorandum.
 II.
Gen. Stat. 7-250 requires that an appellant from a sewer assessment be an aggrieved person. The facts here are that Raphael Cocchiola conveyed 290 Commercial Street to his son, Anthony, on January 9, 1992, two months before the assessment was determined, but the deed was not recorded until May 20, 1992, some 2-1/2 months after the assessment was filed. Rather than become concerned with the effect, if any, of the unrecorded deed, the court adopts the defendant's suggestion and joins Anthony as a co-plaintiff. Such a joinder is proper. Gen. Stat. 52-101, 52-107; Practice Book 83. Considered together, Raphael and Anthony, as owners, satisfy the test for CT Page 11220 aggrievement. See Hamann v. Newtown, 14 Conn. App. 521, 525
(1988).
 III. A.
A special assessment for a local improvement such as a sewer line, as presumed to be valid. The landowner has the burden of providing sufficient evidence to rebut the presumption. Anderson v. Litchfield, 4 Conn. App. 24, 28
(1985). In the court's view, the question of whether 290 Commercial Street was benefited by the installation of the public sewer line depends, in the first instance, upon the nature of the easement that Anthony held across the land of Colangelo and Calabrese.
An easement may be appurtenant or in gross. If in gross, the easement belongs to Anthony Cocchiola independently of his ownership or possession of any specific land. If appurtenant, the easement attached to land held by Anthony Cocchiola when the easement was granted. Saunders Point Assn., Inc. v. Cannon,177 Conn. 413, 415 (1970); Lichteig v. Churinetz, 9 Conn. App. 406,411 (1986). The question is to be resolved by ascertaining the intent of the grantor and grantee as manifested in the language of their agreement and not by resort to parol evidence unless their language is found to be unclear or ambiguous. Eis v. Meyer, 213 Conn. 29, 32 (1989).
A review of the document entitled "Easement" executed February 19, 1974, demonstrated in a clear manner that the grant thereunder was an appurtenant easement. The grant runs not only to Anthony Cocchiola, but also to his heirs and assigns, words that are presumptive of an appurtenant easement. Leabo v. Leninski, 182 Conn. 611, 614 (1981). More important, however, is the fact that the easement was part of a transaction whereby Anthony purchased the southerly portion of the land of Colangelo and Calabrese, which land he developed and later sold to The Banking Center and D.L.O. Enterprises. The agreement does not mention land of Raphael and Lucy Cocchiola or any further property other than the portion sold to Anthony Cocchiola and the portion retained by Colangelo and Calabrese. The court concludes that an appurtenant easement was created across the remaining land of Colangelo and Calabrese to benefit the parcel that they sold to Anthony Cocchiola. An appurtenant easement CT Page 11221 requires a dominant as well as a servient estate and the same person must have unity of title to both the easement to and the dominant estate. Ozyck v. D'Atri, 206 Conn. 473, 474 (1988).
Moreover, the evidence demonstrated that there was no route by which 290 Commercial Street could be connected to the private sewer line. Admittedly dominant and servient estates need not be adjacent, Saunders Point Assn., Inc. v. Cannon, supra but an easement must be in existence. Such an easement was contemplated by the agreement between The Banking Center, as the grantee of Anthony, and Raphael and Lucy. But that agreement expired on January 29, 1983, and there was no showing that it was capable of being extended or renewed.
The court must conclude that 290 Commercial Street does not have access to the private sewer line. Consequently, 290 Commercial Street is benefited by the installation of the new public sewer line in New Wood Road.
 B.
The presumption of validity that attends special assessments extends to their amounts. Cyr v. Coventry,216 Conn. 436, 442 (1990); Katz v. West Hartford, 191 Conn. 594, 602
(1983). The rule is that the monetary value of a special benefit conferred by the installation of a sewer system must be calculated by the difference between the market value of the real estate with and without the system, even though such a measurement may mean that the cost of the system cannot be fully recovered by the municipality. Gen. Stat. 7-249; Tower Business Park Associates Number One Limited Partnership v. Water Pollution Control Authority, 213 Conn. 112, 118 (1989).
William Lanese's opinion of no after improvement enhancement of value is undercut by the court's conclusion that 290 Commercial Street has benefited from the public sewer line. Before determining the correctness of Robert Nocera's appraisal, however, the impact upon value of the present septic system and the fact that so long as it operates adequately, 290 Commercial Street cannot be forced to connect to the public sewer must be considered.
In claiming that the septic system reduces or eliminates, at least for a time, the special assessment, the plaintiffs, Raphael and Anthony, rely on Carlson-Lang Realty Co. v. City of CT Page 11222 Windom, 240 N.W.2d 517 (Minn. 1976) a decision that has been cited frequently by Connecticut courts. E.g. Katz v. West Hartford, supra, Bridge Street Associates v. Water Pollution Control Authority, 15 Conn. App. 140, 144 (1988). the relevant holding of Carlson-Lang is that the value of a pre-existing private septic system should not have been deducted from the pre-improvement value of the land on the theory that the City could prevent its use at any time. Otherwise, Carlson-Lang is in accord with our Connecticut cases in determining an enhancement of value from a special benefit. A necessary corollary to Carlson-Lang is that a private septic system should not be the subject of a separate valuation, as testified to by Mr. Lanese, but rather should have been included in the total pre-improvement market value of the subject property. In any event, the two appraisers seemed to agree that the availability of sewers normally increases the market value of real estate.
 C.
Remaining for discussion are the erroneous notations in the assessor's records that 290 Commercial Street had a sewer connection and the defendant's offer to credit the $450.00 that Anthony Cocchiola paid when he installed the private sewer line against the special assessment. The plaintiffs, Raphael and Anthony contend that the erroneous information on the assessor's card provides the court with a "historical basis" to declare that the special assessment is invalid. The defendant now claims that the $450.00 should be credited to other property that Anthony sold. The court disagrees with both claims.
If the erroneous note on the assessor's card was the cause of increased taxation, the plaintiffs had and may still have adequate remedies under Gen. Stat. 12-117a, 12-118 and 12-119. If the $450.00 were credited to another property, the present owner would probably owe it to Anthony on a claim of unjust enrichment. Such circuity should be avoided.
 IV.
What the plaintiffs, Raphael and Anthony Cocchiola, had to establish by a fair preponderance of the evidence was that the special assessment exceeded the increase in the property's market value resulting from the installation of the sewer. Bridge Street Associates v. Water Pollution Control Authority, supra at 143. This burden was not sustained. The impact on CT Page 11223 market value from an improvement is not necessarily dependent upon current actual use such as the present septic system. Tower business Park Associates Number One Limited Partnership v. Water Pollution Control Authority, supra at 119. The appeal from the special assessment of $16,050.00[4] is therefore dismissed.
BARNETT, J.