HARTFORD NATIONAL BANK AND TRUST COMPANY,
TRUSTEE (ESTATE OF NETTIE E. ROCKWELL) *v.*
REDEVELOPMENT AGENCY OF THE CITY
OF BRISTOL

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

Argued November 14, 1972—decided February 7, 1973

*Kenneth J. Laska,* for the appellant (defendant).

*Alfred V. Covello,* with whom, on the brief, was *J. Harold Williams,* for the appellee (plaintiff).

MacDonald, J.  In this appeal from a judgment awarding compensation for the taking through condemnation of a claimed interest in land, the sole issue presented concerns the valuation by a state referee of certain covenants restricting the use of land for the benefit of the plaintiff as trustee of a trust fund created under the will of Nettie E. Rockwell, late of the city of Bristol.  Since the defendant failed to brief its assignments of error pertaining to the finding, they are treated as abandoned; *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495, *State* v. *Benson,* 153 Conn. 209, 217, 214 A.2d 903; and the facts as set forth in the finding are considered as undisputed.

The plaintiff, the Hartford National Bank and Trust Company, is the trustee under the will of Nettie E. Rockwell.  Under the terms of the will, certain funds were left to the plaintiff in trust to be used according to the following directions contained in the will: "In the event of the purchase of land lying west of the property formerly belonging to my late husband Albert F. Rockwell upon which is now located the Bristol High School between the Rockwell Memorial Boulevard on the north and South Street on the south and its purchase is deemed advisable by the City Council of Bristol, and the Bristol Board of Education, and the Board of Park Commissioners, my said trustee is hereby authorized and empowered to use a portion of the income or principal of this fund of Seventy-Five

Thousand (75,000) Dollars for such purchase; provided that: in the event of the use of any of this fund in such purchase, the property acquired shall thereafter be restricted in perpetuity against the conduct of any mercantile or manufacturing business on the same, and that no building or part thereof shall be erected or maintained within thirty (30) feet of any highway adjoining the premises."

During the years following the creation of this trust, the city of Bristol purchased four parcels of land known as lots 82, 83, 111 and 112, all of which were near or adjoined the Bristol high school and were within the area mentioned in Mrs. Rockwell's will. These lots have been used as part of the high school grounds. The four parcels were purchased from third parties with funds totaling $47,500 made available to the city of Bristol by the plaintiff out of the trust in accordance with its provisions. As consideration for the use of the trust funds to purchase these parcels, the city of Bristol covenanted and agreed with the plaintiff as trustee in a document entitled "Agreement with the City of Bristol" (duly recorded in the Bristol land records in June, 1945) that it would abide by the restrictions in the trust.[1]

On December 19, 1968, the redevelopment agency

---

[1] "Now therefore, in consideration of such expenditure of said trust fund for such purpose, in accordance with the authority contained in the will of said Nettie E. Rockwell, the City of Bristol as the grantee in said deed does hereby covenant and agree to and with said Hartford National Bank & Trust Company, as trustee Under Will of Nettie E. Rockwell, and its succession [sic] in said trust, that no mercantile or manufacturing business shall ever be conducted on said premises so acquired; that no building or part thereof, shall ever be erected or maintained within (30) feet of any highway adjoining said premises so conveyed to the City of Bristol, and the same shall be used and maintained as an addition to the property upon which is located the Bristol High School."

of the city of Bristol, acting on behalf of the city of Bristol and pursuant to § 8-129 of the General Statutes, condemned the restrictive covenant created by the foregoing agreement and filed with the Superior Court a statement of compensation determining the amount of compensation to be paid to the plaintiff to be the sum of one dollar. As a result of the condemnation, the restrictive covenants were extinguished and the premises became qualified for industrial, commercial and apartment house uses under the Bristol zoning ordinances. On May 8, 1969, the plaintiff appealed from the statement of compensation, praying that the damages be reappraised and the matter was referred to Hon. Abraham S. Bordon, state referee, who heard evidence on the value of the restrictive covenants. The referee determined that the proper method of valuation was the difference between the value of the property with and without the restrictions in question. This difference was computed to be $37,180, and judgment was rendered for that amount less the one dollar deposited by the defendant, together with interest and appraisal fees.

The defendant redevelopment agency of the city of Bristol assigns as error the conclusion of the referee that the value of the restrictive covenants was the difference between the value of the affected property with and without the restrictions. Since the plaintiff was not an owner of land adjoining the restricted property the defendant argues that there was no actual loss to the plaintiff as a result of the condemnation although apparently it at least concedes that the restrictive covenants constitute an interest in property by admitting the allegation in the complaint that the plaintiff has an interest in the condemned land. In *Stamford* v. *Vuono,* 108

Conn. 359, 143 A. 245, this court held that when property subject to a restrictive covenant is taken for a public use the owner of the property for whose benefit the restriction is imposed is entitled to compensation, stating, at page 368, that "[s]uch restrictions are in the nature of an easement constituting an interest in the land upon which they are imposed." See 2 Nichols, Eminent Domain (3d Ed.) § 5.73, where such restrictions are characterized as "equitable easements in the land restricted."[2] Here, however, there is no specific property owned by the trust for the benefit of which the restrictions are imposed, so that the restrictive covenants cannot be considered as creating an "easement appurtenant" such as existed in *Stamford* v. *Vuono*, supra, and which has been defined as one which "is created to benefit and does benefit the possessor of the land in his use of the land." Restatement, 5 Property § 453. "It must have been created to benefit the owner of it as the possessor of a particular tract of land." Id., comment a.

On the other hand, it seems clear that what the restrictive covenants did create for the benefit of the plaintiff trustee is an easement in gross, which is defined as one which "is not created to benefit or . . . does not benefit the possessor of any tract of land in his use of it as such possessor." Restate-

---

[2] "The majority view holds that such a restriction (often characterized as an equitable servitude) constitutes property in the constitutional sense and must be compensated for if taken. Such restrictions constitute equitable easements in the land restricted, and when such land is taken for a public use that will violate the restrictions, there is a taking of the property of the owners of the land for the benefit of which the restrictions were imposed. The owners of such property cannot maintain proceedings for damages against the original owner or enforce the restrictions against the condemnor, but they are entitled to an award of compensation for the destruction of their easements." 2 Nichols, Eminent Domain (3d Ed.) § 5.73 [1].

ment, 5 Property § 454. "An easement in gross belongs to the owner of it independently of his ownership or possession of any specific land. Therefore, in contrast to an easement appurtenant, its ownership may be described as being personal to the owner of it." Id., comment a; see *Whitmier & Ferris Co.* v. *State,* 12 App. Div. 2d 165, 209 N.Y.S.2d 247, holding the exclusive right to place advertising signs on a wall or fence to be an easement in gross for which the plaintiff advertising corporation was entitled to compensation when the land was taken by eminent domain. "Depending on its period of duration, an easement in gross may be, as an interest in land, either real property or a chattel real. Thus, if it is to endure indefinitely or for a period measured by the life of a human being, it is real property." Restatement, 5 Property § 454, comment b.

It seems clear that the easement in gross created by the restrictive covenants involved here is of indefinite duration. The relevant portion of § 47-2 of the General Statutes, commonly referred to as the "Statute of Charitable Uses," provides that "[a]ll estates granted for the maintenance . . . of schools of learning . . . or for any other public and charitable use, shall forever remain to the uses to which they were granted, according to the true intent and meaning of the grantor, and to no other use whatever." Here, the land purchased by the city of Bristol with moneys advanced to it by the plaintiff trustee was expressly subjected to duly recorded restrictive covenants which required that such land "shall be used and maintained as an addition to the property upon which is located the Bristol High School," plus other specific restrictions, all "in accordance with the authority contained in the

will of said Nettie E. Rockwell." "We have repeatedly held that a trust for charitable uses is not within the rule against perpetuities, and in some of the cases the trusts were of real estate to be held in perpetuity for the purpose specified . . . and the same reasons which have led to the decision that the rule against perpetuities will not be applied to defeat charitable trusts require also a conclusion that the same is true as regards the rule against restraints on alienation." *Alexander* v. *House,* 133 Conn. 725, 727–28, 54 A.2d 510. It is interesting to note that several decisions of this court involving lands affected by the statute of charitable uses, although distinguishable from the case before us on their facts, arose under condemnation proceedings. See *Hiland* v. *Ives,* 154 Conn. 683, 228 A.2d 502; *Winchester* v. *Cox,* 129 Conn. 106, 26 A.2d 592.

"An easement is extinguished by a taking by eminent domain of the servient tenement, or of an interest therein, to the extent to which the taking permits a use inconsistent with the continuance of the use authorized by the easement." Restatement, 5 Property § 507; see *United States* v. *0.01 Acre of Land,* 310 F. Sup. 1379, 1387 (D. Md.); 26 Am. Jur. 2d, Eminent Domain, § 174, and authorities therein cited. When the city of Bristol, through an agent of its own creation, the Bristol redevelopment agency, extinguished the restrictive covenant, it obviously increased the value of the land acquired by it, the so-called "servient tenement," thus released from the prior restrictions against its use. "Upon the extinguishment of an easement by eminent domain, the owner of the easement is entitled to compensation measured by the value of the easement." Restatement, 5 Property § 508. "The general test of value in such cases is the amount a

purchaser desiring to make the use authorized by a particular easement would be willing to pay. The effect on the value of the servient land of the extinguishment of an easement probably has a closer relation to the value of the easement when it is in gross than when it is appurtenant." Id., comment d.

With respect to the method of measuring the value of an easement in gross, the Restatement, 5 Property, to which we frequently have turned for assistance in resolving this issue, offers no certain guidelines and, on the contrary, in § 566, issues an express caveat based on the "uncertain and developing state" of the authorities on that subject.[3]

In the case before us, the parties elected to have the value of the restrictive covenants determined on the basis that they constituted an interest in property. As previously noted, the complaint alleged that the plaintiff "has an interest" in the condemned land and this allegation was admitted by the defendant. This indicates that the parties voluntarily submitted to a state referee under condemnation proceedings the valuation of the restrictive covenants. That the referee recognized the unusual nature of the subject matter before evaluating it is apparent from his memorandum of decision in which he states: "As to the legality or the propriety of

---

[3] "Upon a condemnation of land subject to the obligation of a promise respecting its use in such manner as to extinguish the interest in the land created by the promise, compensation must be made to those entitled to the benefit of the promise." *"Caveat:* The Institute takes no position upon the question of the measure of the compensation to be paid upon the extinguishment by eminent domain of an interest in land arising out of a promise respecting the use of the land for the reason that the authorities on the question are in an uncertain and developing state and the Institute deems it unwise to attempt to anticipate the future course of development." Restatement, 5 Property, pp. 3320, 3321.

this proceeding I make no comment, as these questions would involve questions of law, which might have been raised in the Superior Court, had the Bank so desired. I confine this memorandum to the value of the restrictive covenants which were taken."

There remains for our determination only the question whether the judgment rendered was a proper award of compensation for the plaintiff's loss of the benefits of the restrictive covenants. Whether they be viewed as creating an easement in gross or simply as enforceable promises respecting the use of the land, we believe that the method employed by the referee, namely, subtracting the value of the land subject to the restrictive covenants from its value without the restrictions, was the correct way to determine the value of the covenants. This was the method employed by the appraisers for both parties who, moreover, agreed on the value of the land without the restrictions which was adopted by the referee. We cannot agree with the claim of the defendant that the referee employed the wrong test in awarding compensation to the plaintiff.

There is no error.

In this opinion the other judges concurred.