[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff from the assessment of damages in the amount of $46,000 paid by the defendant for the extinguishment by eminent domain on August 11, 1988, of a utility transmission easement affecting two parcels of state-owned land totalling 2.857 acres situated within the right of way limits of present Interstate Route 91, Connecticut Route 15, and U.S. Route 5. This was a total taking of the easement rights for the layout, alteration, extension, widening, change of grade and improvement of said highways.
On August 11, 1988, the defendant condemned all of the right, title and interest of the plaintiff in and to the following easement areas:
Parcel No. 1 — Easement Taking Area, containing 2.1 acres, more or less, and bounded:
Westerly — by land now or formerly of The Connecticut Light and Power Company, 145 feet, more or less;
Northerly — by land of the State of Connecticut, present Interstate Route CT Page 2315 91, Connecticut Route 15 and U.S. Route 5, 644 feet, more or less, by a line designated "Existing Easement Line," as shown on the map hereinafter referred to;
Easterly — by land now or formerly of the City of Hartford, 145 feet, more or less;
Southerly — by land of the State of Connecticut, present Interstate Route 91, Connecticut Route 15, and U.S. Route 5, 651 feet, more or less, by a line designated "Existing Easement Line," as shown on said map.
Parcel No. 2 — Easement Taking Area, containing 0.757 of an acre, more or less, and bounded:
Westerly — by land now or formerly of The Connecticut Light and Power Company, 51 feet, more or less;
Northerly — by land of the State of Connecticut, present Interstate Route 91, Connecticut Route 15 and U.S. Route 5, 670 feet, more or less, by a line designated "Existing Easement Line," as shown on said map;
Easterly — by land now or formerly of the City of Hartford, 51 feet, more or less;
Southerly — by land of the State of Connecticut, present Interstate Route 91, Connecticut Route 15 and U.S. Route 5, 672 feet, more or less, by a line designated "Existing Easement Line," as shown on said map.
Said easement areas, together with all appurtenances, are more particularly shown and delineated on a map entitled: "Town of Hartford, Map Showing Easement Acquired From The Conn. Light Power Co. by The State of Connecticut, I-91 CT. 15 Charter Oak Bridge (Limited Access Highway) Scale 1"=40', May 1988, Robert W. Gubala, Transportation Chief Engineer — Bureau of Highways." [63-384(63-434)1F].
The premises taken are a portion of the easements originally granted by the State of Connecticut to The Hartford Electric Light Company on December 26, 1963, and recorded in Volume 1118 at Page 695 of the Hartford Land Records.
The taking date is August 11, 1988, when realty and facility damages were assessed at $1.00. There was an amended notice of condemnation dated December 7, 1988, with damages assessed at $1,299,186.25, of which all but $1.00 were allocated for the relocation of the utility lines. A second amended notice of condemnation was filed on June 7, 1989, herein the total damages were assessed at $1,345,185.25. The portion of the amended damages allocated to the easement rights was $46,000, which amount is the subject of CT Page 2316 this reassessment appeal. The balance due of $45,999 was paid on or about June 7, 1989.
For considerations of safety and best view-point, the two easements were viewed by the court in the presence of counsel from the north side of Airport Road, which bridges the same highways as the subject easements. The nearest easement, being Parcel No. 2 and containing 0.757 of an acre, is approximately 525 feet north of Airport Road. It is 50 feet wide and approximately 671 feet long. Parallel to this easement and about 440 feet to the north is the second easement, being Parcel No. 1 and containing 2.1 acres. This easement is 140 feet wide and approximately 647 feet long.
An important consideration for the court in its reassessment of damages is the effect of the two easements upon the use and development of the fee underneath the transmission power lines that utilize these easements. In this regard it should be noted that the easements are not located along the boundaries or edges of the servient estate owned by the defendant underneath them. Counsel for the defendant correctly asserts that unlike the plaintiff's present standard form of electric distribution easement under which the grantor cannot build, excavate, fill, flood, grade, park vehicles, plant trees or shrubbery and otherwise improve the fee without the written permission of the grantee, the grant by the defendant of these easements on December 26, 1963, did not by its terms restrict the use of the fee bar the defendant. The absence of such express restrictions is not, however, conclusive. Judicial notice may be taken of safety factors prohibitive of any residential or industrial use of the fee underneath the power lines. Even in the use of the fee for highway purposes, no relevant governmental authority would permit the erection of a toll station or maintenance facility on the ground underneath the power lines because of obvious safety considerations.
An important factor in this proceeding overlooked by the parties and their appraisers is the extent or scope of the easements granted by the defendant. These unnoticed terms create a documented limitation upon the defendant's use of the fee. The grant of these easements, inter alia, by the State of Connecticut to The Hartford Electric Light Company, by instrument dated December 26, 1963, and recorded in the Hartford Land Records in Volume 1118 at Page 695, concurrently provided:
"The Grantor herein, does further give and grant unto the Grantee and its sucessors and assigns forever, full and perpetual subterranean easements for the purpose of containing therein, all of the necessary facilities which in the judgment of the Grantee are normally used for the transmission of electrical power.
"The said subterranean easements shall be located specifically in the same locations as the four easements herein conveyed and described.
"The Grantee herein, for itself and its successors and assigns, expressly agrees, that the subterranean easement rights herein granted shall CT Page 2317 not be put into effect until the plans therefore (sic) have been submitted to and approved by the State Highway Department, and subsequent to the approval thereof, all work relative to the subterranean easements shall be performed under the supervision of the Highway Department." (Emphasis added.)
Both parties are in agreement, and the court so finds, that the highest and best use of the plaintiff's easements taken by the defendant is their continuation for power transmission lines. All three appraisers, the two for the plaintiff and the one for the defendant, utilized the comparison of land sales as the foundation for their estimate of damages. After analyzing these sales for their estimate of the fair market value of land acreage, the respective appraisers for the parties differed in their application of such valuations to estimate the plaintiff's damages from the taking.
In the plaintiff's first appraisal made on May 12, 1989, the appraiser found three sales that he considered comparable to the subject and which ranged in value from $81,664 to $598,429 per acre. Based upon his analysis of these comparable sales, he estimated that the subject property was worth $80,000 per acre. He then took 50% of this estimated value per acre and concluded that the easements were worth $40,000 per acre. After multiplying this unit acre value by 2.857 acres covered by the two easements, he found the plaintiff's damages to be $114,000.
The appraiser's application of the 50% fee factor in valuing the easement was reportedly based on his past experience over many years. In appraising easements, he estimates that 50% of the fee value is a fair and reasonable percentage to use for the appraisal of an easement interest.
The plaintiff's second appraiser used seven different comparable sales in his later appraisal of the two easements. These ranged in value from $97,593 to $625,000 per acre. Based upon his analysis of these comparable sales, he estimated that the subject property was worth $100,000 per acre. He then took 50% of this estimated value per acre and concluded that the easements were worth $50,000 per acre. After multiplying this unit acre value by 2.857 acres covered by the two easements, he found the plaintiff's damages to be $140,000.
This second appraiser's application of the 50% fee factor in valuing the easement was based on these considerations: (1) The use of the land as described in the easement deed is broad. (2) The easement effectively precludes any other party from creating a permanent improvement within its right-of-way, except for the existing and proposed highways. (3) The sharing of the rights of use associated with the transportation and utility land uses resulted in an effective equal sharing of the land within the taking area prior to the taking.
The defendant's appraiser utilized the before and after rule in establishing the plaintiff's damages. This rule was applied to the entire 35 acres of the servient estate owned by the defendant, which the two easements CT Page 2318 crossed, before and after their taking. In his opinion the value of the two easements was equal to the increase in fair market value of the 35 acre parcel generated by their extinguishment. Based upon a range of values for three comparable parcels from $125,287 per acre to $173,828 per acre, he found the per acre value of the 35 acres to be $160,000. This valuation was utilized in ascertaining the before and after fair market values of the defendant's property. The per acre value of $160,000 before and after the taking the court finds to be fair, just and reasonable.
In order to obtain a valuation of the property encumbered by the easements, the defendant's appraiser factored the effect of the encumbrance upon the valuation of the fee underneath. It was his opinion that the percentage of the underlying fee value that should properly be allocated to the respective easement rights was 10%. This was "due to [the] relatively large size of [the] `subject' parcel when compared to [the] relatively small easement area. (Effect on developability [was] very limited.)" In his estimation, the effect of the easements on the entire parcel's developability was "nominal" because of its large size.
Based upon these conclusions, the defendant's appraiser calculated the plaintiff's damages as follows:
After value: 35 acres unencumbered @ $160,000 per acre = $5,600,000 Less: Before value: 32.143 acres unencumbered @ $160,000 = $5,142,880 2.857 acres encumbered @ $160,000 x 90% = 411,408
 $5,554,288 Say $5,554,000 Easement value or taking damages = $ 46,000
In simpler mathematics and clearer terms, his calculation of damages was as follows:
After value: 2.857 acres unencumbered @ $160,000 per acre = $ 457,120 Less: Before value: 2.857 acres encumbered @ 90% of $160,000 per acre = 411,408
Easement value or taking damages = $ 45,712 Say $ 46,000
This is the correct and proper manner of expressing his computation of damages. Otherwise, one is misled by his addition to both sides of the equation of the value of 32.143 acres of unencumbered land @ $160,000 per acre, or $5,142,880. In its simplest calculation or analysis, his estimate of the value of the easements or taking damages to the plaintiff was 10% of the fair market value of 2.857 acres unencumbered by the easements @ $160,000 per acre totalling $457,120, or $45,712, rounded to $46,000. CT Page 2319
The plaintiff contests his computation of damages as unsound and improper because it was allegedly based on irrelevant and improper considerations. In addition, the plaintiff maintains that the 10% deduction or allowance from the fee valuation for easement valuation per acre was based in part on the impact the easement had on the highest and best use of the fee as a transportation corridor, without regard to the easement's highest and best use.
Without passing judgment at this time on the correctness of the defendant's calculation of percentage of deduction from fee valuation for the encumbering easements before their taking by the defendant, the court finds that the formula utilized comports with the law and is the proper method for calculating damages to the plaintiff by the condemnation and extinguishment of the two easements.
The facts presented to the court by the extinguishment of the power line easements are unique. The most common condemnation cases concerning easements involve the reverse situation to that found here, namely, the talking of property for power line rights-of-way. The "before and after" rule applies in those cases as in other partial taking cases. The first step is to determine the full fee value of the strip of land used for the easement. The value of this strip, after the easement is taken, must then be found. The difference in these two quantities is the value of the easement rights taken. See 7A Nichols, Eminent Domain (3d Ed.) Section 12.05. The same rationale applies in the reverse factual situation being considered in this case, except, however, the rule must be applied in the reverse order of "after and before" values to determine by their difference the value of the easements taken by the feeholder as damages in their condemnation.
This methodology has been approved by our Supreme Court. In Hartford National Bank Trust Co. v. Redevelopment Agency, 164 Conn. 337 (1973), the court was confronted with the identical issue now under review, except that the encumbrances taken by eminent domain there were restrictive covenants upon the servient land. As a result of the condemnation, the restrictive covenants were extinguished. This difference in the nature of the land encumbrance is without legal significance. An encumbrance, whether on the ground or above the ground, is a right to, or interest in, land which reduces the fee estate and diminishes its value. By the same rationale, its extinguishment, whether on the ground or above it, enlarges the fee estate and increases its value.
Determinative of the rule to be followed here is the court's statement in Hartford National Bank Trust Co., at page 345: "[W]e believe that the method employed by the referee, namely, subtracting the value of the land subject to the restrictive covenants from its value without the restrictions, was the correct way to determine the value of the covenants. This was the method employed by the appraisers of both parties who, moreover, agreed on the value of the land without the restrictions which was adopted by the referee. We cannot agree with the claim of the defendant that the referee employed the wrong test in awarding compensation to the CT Page 2320 plaintiff."
In estimating the value of the easements at 10% of the unencumbered fee value, the defendant's appraiser failed to account for the circumstances affecting their value noted earlier. The easements were not located along the boundaries or edges of the servient estate, but across its interior, a factor which would increase their interference with the use or development of the fee to the entire servient estate and diminish its value. Another factor not recognized was that the two easements were not located side by side, but were about 440 feet apart, thereby enlarging the scope of their obstruction to the use or development of the fee. A further element of importance in the valuation of the easements with a corresponding diminution of value in the fee was the extinguishment of the correlative subterranean easements located specifically in the same locations as the two aerial easements taken by eminent domain.
A state referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of our courts with the duty of making an independent determination of value and fair compensation in the light of all circumstances, the evidence, his general knowledge and his viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 383, 388 (1989); Birnbaum v. Ives,163 Conn. 12, 21-22 (1972); Feigenbaum v. Waterbury, 20 Conn. App. 148, 153
(1989). It is his task to reach a result that gives the plaintiff, as nearly as possible, a fair equivalent in money as just compensation for the property taken. Mathis v. Redevelopment Agency, 165 Conn. 622, 623 (1973); Feigenbaum v. Waterbury, supra, 153-54.
Based upon a full consideration of the evidence offered by the parties, a viewing of the subject premises and its surrounding area, and a review of the comparable sales upon which the appraisers relied, and other relevant factors, such as the highest and best use of the property, its size, shape, topography, location and highways thereon, and upon my own knowledge of the elements constituting value, I find the plaintiff's damages for the taking of the easements to be as follows:
After value: 2.857 acres unencumbered @ $160,000 per acre = $ 457,120 Less: Before value: 2.857 acres encumbered @ 78% of $160,000 per acre = 356,554 _ _ _ _ _ Easement value or taking damage = $ 100,566 Rounded to $ 100,500
Judgment may enter for the plaintiff in the amount of $100,500, less $16,000 already paid, or an excess of $54,500, with interest on such excess from the date of taking to the date of payment, in addition to interest on $45,999 from the date of taking to June 7, 1989, together with costs and a reasonable appraisal fee of $1000. CT Page 2321
WILLIAM C. BIELUCH State Trial Referee