[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff Marie G. Bolan, the owner of two adjoining parcels of landlocked real property in the Town and County of Litchfield, Connecticut, has brought this action against defendant Avalon Farms Property Owners Association, Inc., the owner of certain "open space" and "open space conservation" property in and around the adjacent Avalon Farms Subdivision, to obtain a declaratory judgment determining: first, that she owns an express easement, between her property and the nearest public highway, over a portion of the defendant's property that constitutes a discontinued segment of that highway; second, that in the absence of an express easement over the defendant's property in the area of the discontinued highway, she owns an easement by implication or necessity over that area; and third, that regardless of its precise legal description, her easement over the defendant's property includes the right to install utilities in the easement area. CT Page 11965
The parties have submitted this case for the Court's decision based on a short stipulation of facts and a series of uncontested documentary exhibits. On the basis of that record, the Court makes the following findings of fact and conclusions of law.
FINDINGS OF FACT The Parties and Their Subject Properties:
1. Plaintiff Marie G. Bolan (Mrs. Bolan), now or formerly of Flushing, New York, is the owner of two adjoining parcels of land totaling 161± acres (the Bolan property) in the Town and County of Litchfield, Connecticut. Mrs. Bolan acquired the property from her husband, Thomas A. Bolan, by Quitclaim Deed dated October 6, 1989 and recorded in the Litchfield Land Records, Volume 201 at pages 1092-93, on October 16, 1989.
2. The Bolan property has no frontage on a public highway, and thus is landlocked.
3. Defendant Avalon Farms Property Owners Association, Inc. (the Association) is a corporation duly organized under the laws of the State of Connecticut with its principal place of business in Bantam, Connecticut. The Association is the owner of a network of "open space" and "open space conservation" land (the Association property) in and around the Avalon Farms Subdivision, in Litchfield, Connecticut. The Association acquired its property by Quitclaim Deed from Pasquale M. DiNardo, Trustee, dated and recorded in the Litchfield Land Records, Volume 194 at pages 776-77, on January 6, 1988, and by Warranty Deed from Gold Key Builders, Inc., dated and recorded in the Litchfield Land Records, Volume 194 at pages 778-79, on January 6, 1988.
4. The Association property abuts several public highways, including Old Mount Tom Road.
The Physical Relationship Between the Parties' Properties:
5. The Bolan property is bounded on the south by the Association property. The properties' common boundary is the centerline of a discontinued segment of Old Mount Tom Road.
6. The segment in question was discontinued by vote of the Town of Litchfield Board of Selectmen on May 3, 1926, with later approval by the Town at its Annual Town Meeting on October 3, CT Page 11966 1927.
7. There is no evidence in the record that the discontinued segment of Old Mount Tom Road was regularly used for any purpose after 1927.
 The Severance and Separate Conveyance of the Parties' Properties By Their Common Grantor, Isabel D. Curtis
8. From April 27, 1936 until March 14, 1939, the Bolan property and the Association property were owned by one Isabel B. Curtis (Mrs. Curtis), who held them as adjoining parts of a single, larger tract of land. On the latter date, however, Mrs. Curtis divided her property in two along its current boundary, transferring the portion to the south of the discontinued highway, including the Association property, to her son, Charles B. Curtis (Mr. Curtis),[1] and keeping the portion to the north of the discontinued highway, including the Bolan property, for herself.
9. Though Mrs. Curtis's above-described conveyance to Mr. Curtis necessarily resulted in the reconfiguration of her own property, it nonetheless left her with substantial frontage on several public highways. Accordingly, in her deed to Mr. Curtis, she did not reserve an easement over his property in her favor.
10. Fourteen months later, on or about June 5, 1940, Mrs. Curtis transferred all of her remaining property, including the Bolan property, to one Marion P. Heiser (Mrs. Heiser).[2]
Consistent with her earlier deed to Mr. Curtis, Mrs. Curtis's deed to Mrs. Heiser described no easement in her favor over Mr. Curtis's adjacent land.
 The Plaintiff's Chain of Title To the Bolan Property After Its Conveyance By Isabel D. Curtis
11. During her first fifteen years of ownership of the property she had acquired from Mrs. Curtis, Mrs. Heiser unaccountably sold off every piece of the property that abutted a public highway. She concluded this puzzling process on April 1, 1955, by transferring a 376± acre parcel, containing her last 6000± feet of highway frontage, to Louis J. and Albert DiMeo.[3] From that day forward, all of Mrs. Heiser's remaining property was landlocked. CT Page 11967
12. Three years after transferring her last highway frontage to the DiMeos, Mrs. Heiser deeded five parcels of her landlocked property to her son, Charles M. Phinny (Mr. Phinny).[4] One such parcel, identified as the "First Piece" in her deed to Mr. Phinny, was bounded on the south by the discontinued segment of Old Mount Tom Road.[5]
13. Thereafter, upon the death of Mrs. Heiser, Mr. Phinny received a final parcel of landlocked property from her estate.[6] This parcel, which adjoined the "First Piece" described in Mrs. Heiser's 1958 deed to Mr. Phinny, was devised or distributed to Mr. Phinny not later than July 1, 1970.[7]
14. After the death of Mr. Phinny on October 18, 1985, his estate devised or distributed the parcels described in paragraphs 12 and 13 of these Findings of Fact — the "First Piece" described in Mrs. Heiser's 1958 deed to Mr. Phinny and the final parcel devised or distributed to him after her death — to Thomas A. Bolan.[8] Less than one month after acquiring these parcels — collectively, the Bolan property — Mr. Bolan quitclaimed them, as aforesaid,[9] to his wife.
 The Defendant's Chain of Title To the Association Property After Its Conveyance By Isabel D. Curtis
15. Charles B. Curtis, who first gave the name "Avalon Farms" to part of the property he had acquired from Isabel D. Curtis, held that property for almost eleven years before transferring it, in early 1950, to one Witold Malewicz.[10] Mr. Malewicz, in turn, held the property for over twenty years before transferring most of it, in 1970, to Housatonic Valley Farms, Inc. (Housatonic).[11]
16. On August 1, 1977, Housatonic quitclaimed the property it had acquired from Mr. Malewicz to the Southern New England Production Credit Association (Southern New England).[12] Five months later, Southern New England quitclaimed the property to Ralph P. DiNardo, Pasquale M. DiNardo and Myron Chomko, doing business as DiNardo Associates.[13]
17. On January 5, 1978, the day they acquired the property from Southern New England, DiNardo Associates reconveyed it as follows to Pasquale M. DiNardo, Trustee. First, Ralph P. DiNardo quitclaimed his interest in the property to G.R.R.N. Company (G.R.R.N.), an Easton, Connecticut partnership.[14] Then, CT Page 11968 G.R.R.N, Myron Chomko and Pasquale M. DiNardo quitclaimed their joint interest in the property to Pasquale M. DiNardo, Trustee (Mr. DiNardo).[15]
18. On January 24, 1978, less than one month after acquiring the property from DiNardo Associates, Mr. DiNardo filed for record with the Town Clerk of Litchfield a set of subdivision maps entitled "Avalon Farms, Route 202, Litchfield, Connecticut August 1977, Prepared by Empire Associates, Inc., Plainville, Connecticut." These maps (the Subdivision Maps), which had originally been prepared for Mr. DiNardo's predecessor in title, Southern New England, laid out several roadways, "open space" and "open space conservation" areas, and sequentially numbered building lots in and for the Avalon Farms Subdivision. Certified as "substantially accurate" by their drafter, licensed surveyor Robert J. Engels, on August 15, 1977, these maps had previously been approved by the Town of Litchfield Planning and Zoning Commission on November 21, 1977.
19. Also on January 24, 1978, Mr. DiNardo filed for record with the Town Clerk of Litchfield a document entitled "Declaration of Restrictions and Covenants — Avalon Farms." This document (Declaration of Restrictions and Covenants), which had been signed by Mr. DiNardo on January 5, 1978, imposed several restrictions on the use and disposition of land within the Subdivision upon all persons who would ever own land therein, including Mr. DiNardo and his successors as Grantors and all prospective purchasers or transferees of land as Grantees.[16]
20. On January 5, 1979, Mr. DiNardo transferred a portion of the Avalon Farms Subdivision to Gold Key Builders, Inc. The portion so transferred included several of its sequentially numbered building lots, together with all roadways and areas shown as Open Space or Open Space Conservation on the above-referenced Subdivision Maps.[17]
21. Ultimately, on January 6, 1988, after further developing the Avalon Farms Subdivision and selling off several lots within it to individual homebuyers,[18] Mr. DiNardo and Gold Key Builders, Inc. transferred their respective interests in the "open space" and "open space conservation" areas of the Subdivision to the defendant Association.[19]
The Maps Referenced in Defendant's Deeds:
CT Page 11969
22. The deeds by which the Association acquired its "open space conservation" and "open space" property in the Avalon Farms Subdivision described the lands thereby conveyed as those
 designated and shown as "OPEN SPACE CONSERVATION" and "OPEN SPACE" areas on a certain set of subdivision maps (including cover and sheets 1 through 13, inclusive), entitled "Avalon Farms, Route 202, Litchfield, Connecticut August 1977, Prepared by Empire Associates, Inc., Plainville, Connecticut," which subdivision maps are on file in the offices of the Morris and Litchfield Town Clerk and to which subdivision maps reference is herein made for a more particular description of the same.
Litchfield Land Records, Volume 194, pages 776, 778. The Subdivision Maps were introduced in evidence as Defendant's Exhibits ##1-9.
23. Defendant's Exhibit #8 is a map showing that portion of the Association property which abuts the Bolan property in the area of the discontinued segment of Old Mount Tom Road. Referred to in the Association's deeds as "Sheet 13" of the above-referenced Subdivision Maps, Defendant's Exhibit #8 correctly describes the boundary between the Association property and the Bolan property as the "centerline of [the] old road." More importantly, it sets forth the following legend in that strip of Association property which runs parallel and adjacent to the boundary, along the path of the discontinued highway, towards Old Mount Tom Road:
 THIS AREA RESERVED FOR OPEN SPACE ACCESS AREA FOR LANDLOCKED ABUTTERS
The principal landlocked abutter who in 1978 could have gained access to a highway over that strip of land was plaintiff Bolan's predecessor in title, Charles M. Phinny.[20]
24. Defendant's Exhibit #8 also contains a separate, smaller insert showing an area in the southwest corner of the Subdivision, where the following language appears in an "open space conservation" area between the southern edge of Lot 22 and the entrance to Old Mount Tom Road from Route 202:
 APPROXIMATE AREA RESERVED FOR FUTURE DEDICATION TO THE TOWN OF LITCHFIELD, (TO BE USED FOR RELOCATION OF OLD MT. TOM CT Page 11970 ROAD ENTRANCE)
25. Consistent with the latter legend, each of the defendant's deeds explicitly states that the conveyance thereby made is [s]ubject to the rights of the Town of Litchfield over that parcel of land located within an Open Space/Conservation area and shown as "AVALON FARMS RELOCATION OF MT. TOM ROAD (SKETCH) RTE. 202, Litchfield, Connecticut" as shown on Sheet 13 of said subdivision maps.
The Declaration of Restrictions and Covenants Referenced inDefendant's Deeds:
26. The deeds by which the Association acquired its "open space conservation" and "open space" property in the Avalon Farms Subdivision were expressly made subject to the above-described Declaration of Restrictions and Covenants, which was introduced in evidence as Defendant's Exhibit #11.
27. Paragraph 7 of the Declaration of Restrictions and Covenants provides as follows:
 There shall be no hunting of any kind on any of the property described on said maps, including, without limitation, the Open Space/Conservation areas shown thereon. The Grantor, his heirs and assigns, hereby limit and restrict the Open Space/Conservation areas shown on said maps (except for the relocated Mt. Tom road) to conservation and recreational uses, including, without limitation, walking, hiking, jogging, ice skating, horseback riding and cross country skiing and specifically prohibit the use of all motor vehicles, snowmobiles or any other motor driven vehicle in said Open Space/Conservation areas except in connection with the maintenance of said areas. The Grantor for himself, his heirs and assigns agree that he will not convey the said Open Space/Conservation areas to any municipality or agency thereof, except for the relocated Mt. Tom road.
(Emphasis added.)
CONCLUSIONS OF LAW
CT Page 11971 I. Claim of Express Easement
The plaintiff claims initially that she owns an express easement, between her property and the nearest public highway, over a portion of the defendant's adjoining property that constitutes a discontinued segment of that highway. The plaintiff contends, more particularly, that the alleged easement runs along a narrow strip of the defendant's land — fifty feet wide and approximately 1800 feet long — extending along and from the area immediately adjacent to her property's southern boundary to the nearest open segment of Old Mt. Tom Road.
An express easement is an easement expressly memorialized in a deed. "For a determination of the character and extent of an easement we must look to the language of the deed, the situation of the property and the surrounding circumstances . . ." AmericanBrass Co. v. Serra, 104 Conn. 139, 142, 132 A. 565 (1926). "The meaning and effect of the reservation are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances." Taylor v.Dennehy, 136 Conn. 398, 402, 71 A.2d 596 (1950) (citing Mills v.Roto Co. 104 Conn. 645, 647, 133 A. 913 (1926)).
The plaintiff does not contend that the existence of such an easement is supported by any language either in her own deed to the Bolan property or in that of any of her predecessors in title. Instead, she relies on parallel provisions in the defendant's two deeds to the Association property which explicitly refer to, and thus incorporate by reference, certain certified Subdivision Maps on which the easement is allegedly described and depicted.
The deeds by which the defendant acquired the Association property from its immediate predecessors, Pasquale M. DiNardo, Trustee and Gold Key Builders, Inc., explicitly stated that the lands thereby conveyed were those
 designated and shown as "OPEN SPACE CONSERVATION" and "OPEN SPACE" areas on a certain set of subdivision maps (including cover and sheets 1 through 13, inclusive), entitled "Avalon Farms, Route 202, Litchfield, Connecticut August 1977, Prepared by Empire Associates, Inc., Plainville, Connecticut," which subdivision maps are on file in the offices of the Morris and CT Page 11972 Litchfield Town Clerk and to which subdivision maps reference is herein made for a more particular description of the same.
Litchfield Land Records, Volume 194, pages 776, 778. So drafted, the deeds gave clear notice to the defendant that any rights it might have and exercise with respect to its newly acquired property would be subject to all restrictions more particularly set forth on the referenced Subdivision Maps.
Sheet 13 of the Subdivision Maps, which was introduced in evidence as Defendant's Exhibit #8, contains the following legend in the strip of Association property over which the plaintiff claims an easement:
 THIS AREA RESERVED FOR OPEN SPACE ACCESS AREA FOR LANDLOCKED ABUTTERS
The use of this language in the area of the claimed easement is significant for several reasons.
First, the term "reserved" or "reservation" is traditionally associated with the creation of an easement. Thus, in Barnes v.Burt, 38 Conn. 541, 542 (1871), our Supreme Court held that a deed "reserving" use of a certain well on the deeded property to the grantor merely gave the grantor an easement over that property, not a continuing ownership interest in the well that he might exercise to the exclusion of the grantee. Observing that the language used in the deed did not indicate the grantor's intention to retain exclusive rights to the well, the Court declared that the defendant has not the exclusive right to use the well, but a right to its use simply.
 The right then is an easement in the land conveyed. and is created by the conveyance. That brings it within the definition of a reservation, viz. "That Part of a deed or other instrument which reserves a thing not in esse at the time of the grant, but newly created." Bouvier Law Dictionary, "Reservation." It follows therefore that the defendant had no right to change the manner of obtaining water from the well so as to exclude the plaintiffs therefrom.
CT Page 11973Id. (Emphasis added.)
Second, the term "access area" describes a use for the indicated area that is entirely consistent with the traditional purpose of an "easement appurtenant," to wit: to grant the holder some right to use or restrict the use of the another's property, in order that he might benefit from such use or restriction as the owner or possessor of another particular tract of land. See, e.g., Hartford National Bank Trust Co. v. Redevelopment Agency,164 Conn. 337, 341, 321 A.2d 469 (1973). One classic use of an easement appurtenant is to afford the holder access from his property to a public way. Third and finally, the use of the term "landlocked abutters" to identify those for whom the land in question was "reserved" as an "access area" confirms the intent of those who prepared and filed the Subdivision Maps in question to create an easement. For an easement appurtenant to be valid and enforceable, "it must have been created to benefit the owner of it as the possessor of a particular tract of land." Branch v.Occhionero, 239 Conn. 199, 204, 681 A.2d 306 (1996) (holding that a deed granting a right-of-way to a particular person was not enforceable as an easement appurtenant to one of his two nearby properties because the deed did not specify which of those properties was to have benefitted [benefited] from the right-of-way). Here, by positively identifying the intended beneficiaries of the reserved "access area" as "landlocked abutters," those who drafted the Subdivision Maps in question and caused them to be filed in the Litchfield Land Records gave clear evidence of their intent to create an easement over the indicated area in favor of all persons who then owned landlocked property abutting that area.
One such landlocked abutter, whose property is clearly shown and labeled on the Subdivision Map received in evidence as Defendant's Exhibit #8, was the plaintiff's predecessor in title, Charles M. Phinny. The plaintiff therefore claims that as the successor to Mr. Phinny's landlocked property, she now also owns his alleged easement between that property and Old Mt. Tom Road.
The defendant counters this argument in three ways. First, it claims that its predecessors in title obviously had no intent to grant an easement to the plaintiff or any of her predecessors in title to the Bolan property because they conspicuously failed to describe such an easement in any of their deeds. This argument, however, must be rejected, for it simply ignores the proven fact that the map in question is expressly incorporated into the CT Page 11974 defendant's deeds.
It is true, of course, that the mere filing of a plot map on local land records cannot convey a right or interest which the filing party does not then have. Thus, in Stankiewicz v. MiamiBeach Associates, Inc., 191 Conn. 165, 170, 464 A.2d 26 (1983), our Supreme Court rejected as follows the claim of a grantee of real property that upon acquiring the property from the grantor, he acquired an easement appurtenant to that property over certain roadways once owned by the grantor, as shown on a map previously filed by the grantor in the local land records:
 (1) The mere filing of a plot map which delineates roadways and lots thereon does not diminish the interest of the fee owner in and to the roadways portrayed on the map; and
 (2) An implied easement in such roadways may exist only, if it exists at all, when the grantor owns the fee to the roadways and makes reference in the grantee's deed to a map which depicts the roadways.
Id., 171.
In this case, by contrast, one of the defendant's immediate predecessors in title, Pasquale M. DiNardo, owned the fee to the entire Association property when he filed the Subdivision Maps depicting and describing the access area here at issue. Therefore, unlike the grantor in Stankiewicz, who had neither the power nor the intention to convey any interest in the subject roadways to his grantee, Mr. DiNardo had both the power and the apparent intention to subject all conveyances of the Association property to the limitations shown on the certified Subdivision Maps expressly incorporated into his deeds.
The defendant's second argument in opposition to the plaintiff's claim is that the reservation of an easement over the discontinued highway is inconsistent with the Declaration of Restrictions and Covenants — Avalon Farms of Pasquale M. DiNardo, which was also filed in the Litchfield Land Records and incorporated into the defendant's deeds. The Declaration, it is noted, expressly "limit[s] and restrict[s] all Open Space/Conservation areas shown on the [certified Subdivision Maps] to "conservation and recreational uses," and "specifically prohibit[s] the use of all motor vehicles [in those areas] except in connection with the maintenance [there]of[.]" In light of CT Page 11975 these explicit restrictions, the defendant argues that since the area of the discontinued highway, over which the plaintiff now claims an easement, is marked as an "open space conservation" area on the very map relied on by the plaintiff to support her claim, that area must be restricted to "conservation and recreational uses," and must never be used as an access route for motor vehicles to and from the plaintiff's property.
This argument is flawed for the following reasons. First, it purports to read the Declaration of Restrictions and Covenants in isolation from all other portions of the defendant's deeds. This, of course, is inappropriate, for a deed must be construed in light of all of its provisions, which must be read together and reconciled with one another to find the drafter's true intent. In particular, it ignores both the referenced Subdivision Maps and of the Declaration itself, which together compel the conclusion that the restrictions in question do not apply to the "access area" over which an easement is claimed. The Declaration, by its own terms, limits the application of its restrictive language to those portions of the Association property which are shown as "open space" or "open space conservation" areas on the referenced maps. It therefore does not apply to those areas shown on the map which carry other markings or denomination. Logically, then, the legend set forth in the pertinent part of Defendant's Exhibit #8, in the area of the discontinued highway, changes what might otherwise be considered an "open space" area, where the restrictions of the Declaration apply, to something rather different: an "area reserved for open space and access area for landlocked abutters." With this change in designation, the restrictions and limitations otherwise applicable to the area simply do not apply.
In light of the foregoing discussion, it appears to this Court that the most reasonable reading of the defendant's deeds, and in particular of the maps therein referenced, is that by such deeds, the defendant's predecessors in title, Pasquale M. DiNardo and Gold Key Builders, intentionally conveyed the Association property subject to an easement in favor of landlocked abutters, including Charles M. Phinny, over the area of the discontinued highway. It thus appears to the Court that Mrs. Bolan, as a successor in title to Mr. Phinny, was intended by the defendant's predecessors to have the full benefit of that easement to gain access between her property and Old Mt. Tom Road.
As its third argument, however, the defendant rightly claims CT Page 11976 that notwithstanding their intent to create such an easement, the defendant's predecessors had no power to grant an easement to Mr. Phinny, or through him to any of his successors in title, because at the time of the grant in question they lacked "unity of title" to both the Phinny property and that portion of the Association property over which the easement was reserved. Since 1968, the governing law on this subject in Connecticut has been as follows:
 No right of way appurtenant can be created without a dominant as well as a servient estate. Doregibus v. Silverman Furniture Co., 121 Conn. 633, 637, 186 A. 553
[(1936)]. The dominant estate enjoys the benefit of the way, and the servient estate bears the burden. The way can become legally attached to the dominant estate only if the same person has unity of title to both the way and the dominant estate. 25 Am. Jur.2d 426, Easements and Licenses, subsection 11; 28 C.J.S. 634, Easements, subsection 4. A way appurtenant cannot be used for the benefit of land other than the dominant estate. L. Thompson, Real Property (1961 Repl.) subsection 322, p. 76.
Curtin v. Franchetti, 156 Conn. 387, 389, 242 A.2d 725 (1968).
Under this rule, the plaintiff's claim of easement is unenforceable because when the easement was allegedly created, the party who created it did not own both the way and the dominant estate. If the plaintiff's claim of easement were established, the plaintiff's own property would be the dominant estate while the defendant's property, containing the way along the discontinued highway, would be the servient estate. The easement contended for is claimed to have been created in favor of the plaintiff's predecessor in title, Charles M. Phinny, on January 24, 1978, when both the map reflecting the alleged easement and the Declaration of Restrictions and Covenants — Avalon Farms were first incorporated into the deed to the defendant's property. At that time, however, there was not a unity of title between the dominant estate (Mr. Phinny's property) and the servient estate (the Avalon Farms Subdivision). As the record reflects, the only known time when there was a unity of title to the two properties was from March 14, 1936 to April 27, 1939, when both were owned simultaneously by Isabel D. Curtis. However, since Mrs. Curtis did not reserve an easement over the southern portion of her property, containing the Association property, when she transferred it to Charles B. CT Page 11977 Curtis, no claim can now be made that the easement here contended for was properly created at that time.
Since the Curtin case was decided, our Supreme Court has frequently suggested that the unity-of-title doctrine may be outmoded, and perhaps should be discarded. Thus, in Ozyck v.D'Atri, 206 Conn. 473, 479, 538 A.2d 697 (1988), the Court observed:
 We note that the unity of title doctrine has fallen into disfavor with contemporary commentators as an obsolete vestige of feudalism that frustrates the intentions of the grantor. H. Harris, "Reservations in Favor of Strangers to the Title," 6 Okla. L. Rev. 127 (1953); 2 American Law of Property (Casner Ed. 1952) 8.29; 5 Restatement, Property 472, comment a. It has been rejected in several jurisdictions that had formerly followed the rule. Willard v. First Church of Christ, Scientist, 7 Cal.3d 473, 498 P.2d 987, 102 Cal.Rptr. 987 (1972); Townsend v. Cable, 378 S.W.2d 806, 808 (Ky. 1964); Garza v. Grayson, 255 Or. 413, 467 P.2d 960 (1970)."
Accord, Carbone v. Vigliotti, 222 Conn. 216, 223, 610 A.2d 565
(1992) (citing and quoting the foregoing passage from Ozyck);Branch v. Occhionero, supra, 239 Conn. at 202 n. 4 (similarly citing and quoting from Ozyck and Carbone).
Just as frequently, however, the Court has adhered to the doctrine, refusing to reconsider it until a case comes along in which the intent of the grantor to grant a easement to a stranger is so clearly established as to warrant its rejection. Hence, inOzyck, the Court explained that
 In these [out-of-state] cases that have abandoned the doctrine the intention of the grantor to create an easement or other interest in the "stranger to the title" had been clearly expressed in the instrument, unlike the deed [in this case], which does not purport to create an easement but merely acknowledges the possible existence of one without indicating the person or the land to be benefitted [benefited]. Under these circumstances we have decided to defer any reconsideration of the rule adopted in Curtin until we are presented with an appropriate case where the intention of the grantor to create in his deed an interest in someone other than the grantee is reasonably clear."
CT Page 11978 Similarly, in Carbone v. Vigliotti, supra, the Court refused a party's plea that the doctrine be discarded because he failed to demonstrate the intention of the grantor to grant an easement to a stranger. On this score, the Court declared that
 The defendant urges that we overrule Curtin and abandon the unity of title doctrine, as several other states have done. See, e.g., Willard v. First Church of Christ, Scientist, 7 Cal.3d 473, 498 P.2d 987, 102 Cal.Rptr. 987 (1972); Townsend v. Cable, 378 S.W.2d 806, 808 (Ky. 1964); Garza v. Grayson, 255 Or. 413, 467 P.2d 960 (1970). In Ozyck v. D'Atri, supra, 479, however, this court declined to reconsider our adherence to this doctrine because it was not clear in that case that the grantor had intended to create an easement for the benefit of a "stranger to the title." While we recognized that several commentators view the unity of title doctrine as an obsolete vestige of feudalism that frustrates the intention of the grantor; H. Harris, "Reservations in Favor of Strangers to the Title," 6 Okla. L. Rev. 127 (1953); 2 American Law of Property (Casner Ed. 1952) 8.29; 5 Restatement, Property 472, comment a; we decided to defer reconsideration of the subject until we are confronted with a case in which the grantor's intention to create an interest that would violate the rule is "reasonably clear." Ozyck v. D'Atri, supra. In view of our conclusion that there is insufficient evidence to support the inference that John Hamre, in conveying parcel 3, intended to create an easement for the benefit of parcel 2, which he had never owned, the present case affords no more appropriate an occasion than did Ozyck for reconsideration of the unity of title doctrine.
See also Branch v. Occhionero, supra, 239 Conn. at 202 n. 4 (citing and quoting the Court's prior decision in Carbone v.Vigliotti, supra, for the proposition that the doctrine would not be reconsidered until an appropriate case requiring its reconsideration was presented).
In this case, where evidence of intent to create an easement in favor of landlocked abutters — including, presently, the plaintiff — is compelling, this Court is naturally tempted to sound the death knell of the unity-of-title doctrine, and on that basis to enter judgment for the plaintiff. To do that, however, would violate this Court's clear duty to enforce the Supreme Court's binding decisions, leaving to that Court the exclusive power to reconsider its own precedents.[21] This Court CT Page 11979 is therefore constrained to rule that the plaintiff has no lawful easement by express grant by deed over the defendant's property in the area of the discontinued highway.
II. Claim of Easement By Implication or Necessity
Plaintiff Bolan's second claim is that even if she does not own an express easement over the defendant's property along the path of the discontinued highway, she must be found to own an easement by necessity or implication over that area. In support of that claim, the plaintiff presents the following arguments.
On her claim of easement by necessity, the plaintiff correctly notes that the controlling test appears in cases such as HollywyleAssn., Inc. v. Hollister, 164 Conn. 389, 329 A.2d 247 (1973), where our Supreme Court declared that
. . . an easement by necessity will be imposed where a conveyance by the grantor leaves the grantee with a parcel inaccessible save over the lands of the grantor, or where the grantor retains an adjoining parcel which he can reach only through the lands conveyed to the grantee. Collins v. Prentice, [15 Conn. 39], 44 [(1842)] The requirement of unity of ownership is a strict one; Leonard v. Bailwitz, 148 Conn. 8, 11, 166 A.2d 451 [(1960)], Robinson v. Clapp, 65 Conn. 365, 384-85, 32 A. 939 [(1895)], Woodworth v. Raymond, 51 Conn. 70, 76-77 [(1883)]; but to fulfill the element of necessity, the law may be satisfied with less than the absolute need of the party claiming the right of way. The necessity need only be a reasonable one. See Marshall v. Martin, [107 Conn. 32], 37 [(1927)]; Robinson v. Clapp, supra, 387; Myers v. Dunn, 49 Conn. 71, 77 [(1881)]; cf. Pierce v. Selleck, [18 Conn. 321], 328 [(1847)].
 In the case before us, the parties do not dispute the fact that the named defendant was the common grantor both of the plaintiff's property, being the roads in Hollywyle Park, and of the contiguous land now belonging to the defendants Coxeter and Werner. Moreover, the plaintiff has no quarrel with the finding of the court that the adjacent land is inaccessible save by passage through Section 1 of Hollywyle Park. The necessity of a right of way across the plaintiff's roads is absolute in terms of passage by land to and from the public highway. The court, however, agreed with the plaintiff's CT Page 11980 contention that the named defendant's quitclaim conveyance of the roads in 1953 was deliberately made without reservation so as to settle pending litigation and that her purposeful relinquishment of any rights in the premises destroys the basis for any claimed easement by necessity.
 . . . [T]he element of necessity has been rather strictly construed and made to depend on the situation of both parties, the nature and adaptability of the property, and surrounding circumstances. Robinson v. Clapp, 65 Conn. 365, 387, 32 A. 939 [(1881)].
Under this test, an easement by necessity can only be recognized if there is a "reasonable necessity" for its creation and the person claimed to have created it had unity of title to both the land made subject to the easement (the way) and the land to be benefitted [benefited] thereby (the dominant estate).
Here, claims the plaintiff, the existence of reasonable necessity for the claimed easement is self-evident, for without it, she cannot gain access to her land, or thus put it to any profitable use. As for the requirement of unity of title, which the plaintiff concededly cannot satisfy, the plaintiff here, as on her threshold claim of express easement, urges this Court to dispense with that requirement as an outmoded vestige of feudalism.
For the reasons stated in Part I of this Memorandum of Decision, supra at 25-29, this Court must decline the plaintiff's invitation not to follow the unity-of-title doctrine. Any decision to abandon that doctrine must be left to the Supreme Court itself.[22] On that basis alone, this Court must reject the plaintiff's claim of easement by necessity.
As for the plaintiff's underlying claim that there is a reasonable necessity for the claimed easement, moreover, the Court disagrees with the plaintiff that such a necessity has been established in this case. To be sure, the plaintiff's property is now landlocked, having been so rendered by her predecessor in title, Marion P. Heiser. Hence, it is true, as the plaintiff argues, that absent a right-of-way over some adjoining property, her property cannot be accessed from a public highway or be put to any profitable use.
Critically, however, it is by no means clear that the CT Page 11981 plaintiff has any reasonable necessity for the claimed easementover the defendant's property. The defendant's property has not been shown to encircle or enclose the plaintiff's property. Nor has it otherwise been shown to cut the property off from its only viable land route to and from a public highway. To the contrary, the plaintiff's land has been shown to abut both the defendant's property, to its south, and other property to its north and west which was owned by her predecessor in title, Mrs. Heiser, before she sold it to Louis J. and Albert DiMeo.
The latter parcel had over one mile of frontage on public roads or highways when Mrs. Heiser sold it to the DiMeos in 1955, leaving the remainder of her property landlocked. Logically, then, before Mrs. Heiser conveyed that parcel to the DiMeos, access between each and every other part of her property and a public highway could be gained directly over that parcel, without traversing the defendant's land. The plaintiff has produced no evidence whatsoever to show that reasonable access between her property and a public highway cannot still be had over the land once sold by Mrs. Heiser to the DiMeos. She has therefore failed to prove that her parcel is "inaccessible save over the lands of the grantor," Hollywyle Assn., Inc. v. Hollister, supra,164 Conn. at 398, not only because neither the defendant nor any of its predecessors was her "grantor," but because the evidence does not establish that her property is inaccessible save over the defendant's lands.
In sum, though the plaintiff's property is landlocked, she has failed to show any necessity, reasonable or otherwise, to use the defendant Association's property to gain access to it. Other viable access routes between her property and a public road or highway may well exist over that portion of Mrs. Heiser's former property which she conveyed to Louis J. and Albert DiMeo. Indeed, even if no such route now exists, it may well serve the public interest to impose one in recognition of the well established public policy of ensuring that land is made accessible and put to profitable use. Id. at 400. No such easement, however, should be imposed on any land other than that from which the landlocked property was severed when it first became landlocked. Since persons not involved in the conveyance by which the property became landlocked obviously had no power to avoid that result, neither they nor their successors in title should bear the burden of reversing it. For this reason as well, the plaintiff's claim of an easement by necessity must be rejected. CT Page 11982
On her claim of implied easement, the plaintiff states that the controlling test can be found in O'Brien v. Coburn,39 Conn. 143, 148, 664 A.2d 312 (1995), wherein the Appellate Court quoted its earlier decision in Kenny v. Dwyer, 16 Conn. 58, 64,546 A.2d 937, cert. denied, 209 Conn. 815, 550 A.2d 1984 (1988) as follows:
 An implied easement is typically found when land in one ownership is divided into separately owned parts by a conveyance, and at the time of the conveyance a permanent servitude exists as to one part of the property in favor of another which servitude is reasonably necessary for the fair enjoyment of the latter property . . . In the absence of common ownership . . . an easement by implication may arise based on the actions of adjoining property owners . . . There are two principal factors to be examined in determining whether an easement by implication has arisen: (1) the intention of the parties; and (2) whether the easement is reasonably necessary for the use and normal enjoyment of the dominant estate. (Citations omitted.)
Under that test, claims the plaintiff, the outmoded unity-of-title doctrine cannot bar the creation of an implied easement in favor of an adjoining property owner if the owners of adjoining properties demonstrate their intent to create an easement and the easement is shown to be reasonably necessary for the fair enjoyment of the easement holder's property.
Applying the O'Brien/Kenny "test" to the facts here established, the plaintiff makes two essential arguments. First, she claims that the above-referenced Subdivision Maps, incorporated by reference in the defendant's deeds, strongly support the inference that the defendant's predecessors in title intended to grant an easement over the defendant's property in favor of the plaintiff's predecessor in title, Charles M. Phinny. Second, she asserts that such an easement is reasonably necessary for the use and normal enjoyment of her property, for without it that property would be inaccessible from any public highway, and thus would be useless for any lawful purpose, including all uses expressly permitted by the Town of Litchfield zoning regulations.
The defendant counters the foregoing arguments in three ways. First, it contends that implied easements, no less than express easements, are governed by the unity-of-title doctrine. Therefore, it argues, the plaintiff's second claim must be CT Page 11983 rejected for the same legal reasons as its first. Second, the defendant argues here, as it did in opposition to the plaintiff's claim of express easement, that the lack of any language describing such an easement, either in its own deed or that of the plaintiff, defeats the plaintiff's claim that the parties intended to create such an easement. Third, it urges this Court to find that there is no reasonable necessity for the plaintiff to have an easement over its land, since there is no proof that the only route by which the plaintiff can gain access to and from her property runs through its property, and it would be inequitable to impose a burden on its property when neither it nor any of its predecessors played any role in the landlocking of the plaintiff's property.
Though the plaintiff has accurately quoted the Appellate Court's decisions in O'Brien v. Coburn and Kenny v. Dwyer, this Court finds puzzling the dicta in those opinions which suggest that an implied easement can be created even in the absence of a unity of title. This is so because in Stankiewicz v. Miami BeachAssoc., Inc., supra, 191 Conn. at 170, our Supreme Court explicitly held that the unity-of-title doctrine applies to implied easements as well as to express easements.
In Stankiewicz, where a property owner claimed an implied easement over certain roadways shown on a plot map which his grantor had previously filed in the local land records, the Court unambiguously declared that
 As to easements, "[n]o right of way appurtenant can be created without a dominant as well as a servient estate . . . The dominant estate enjoys the benefit of the way, and the servient estate bears the burden. The way can become legally attached to the dominant estate only if the same person has unity of title to both the way and the dominant estate." (Citations omitted.) Curtin v. Franchetti, 156 Conn. 387, 389, 242 A.2d 725 (1968). We hold that this fundamental principle of law applies to the present case as well as to express easements.
Id. (Emphasis added.) In light of this clear statement, the dicta in the Appellate Court's opinions in O'Brien v. Coburn and Kenny v.Dwyer do not appear to be a correct statement of controlling law. Therefore, since our Supreme Court still hews to the unity-of-interest doctrine, this Court is bound to follow that doctrine in assessing the legal sufficiency of the plaintiff's claim of CT Page 11984 implied easement. For that reason alone, the Court must find for the defendant on the plaintiff's claim of implied easement.
If this Court has misread or misapplied Stankiewicz, or if the Supreme Court overturns the unity-of-title doctrine, other issues on appeal will doubtless include the sufficiency of the plaintiff's evidence to show that the defendant intended to create an easement and that such an easement was reasonably necessary to the use and enjoyment of the plaintiff's land. On these issues, the Court has no reason to depart from its earlier findings on the plaintiff's claims of express easement and easement by necessity, for those findings are applicable here as well.
The Court concludes, more specifically, that the plaintiff has adequately demonstrated the intent of the defendant's predecessors, Pasquale M. DiNardo and Gold Key Builders, Inc., to grant her an easement over the defendant's property along the path of the discontinued highway. As more fully described in Part I of this Memorandum of Decision, supra at 16-23, this finding is based explicitly upon the contents of the certified Subdivision Maps which were incorporated by reference in the defendant's deeds.
The plaintiff's showing of reasonable necessity, by contrast, is deficient, for although she has proved that she cannot put her property to any profitable use without having a right-of-way between it and a public highway, she has not established any need or justification for imposing such an easement over the defendant's property to solve her problem. Absent any proof that she lacks a reasonable route between her property and a public highway over other adjoining lands once owned by her predecessor in title, Marion P. Heiser, she has failed to demonstrate any reasonable necessity for imposing an easement over the defendant's land. See Part II of this Memorandum of Decision,supra at 31-34.
CONCLUSION
For all of the foregoing reasons, the Court enters judgment for the defendant on all counts[23] of the plaintiff's complaint.
MICHAEL R. SHELDON, J. CT Page 11985